JASPER TASHJIAN vs. WORCESTER CONSOLIDATED STREET
RAILWAY COMPANY.

MICHAEL CALOOSDIAN vs. SAME.

GEORGE OOZOONIAN vs. SAME.

Worcester.    October 2, 1900. — October 18, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Personal Injuries — Collision of Vehicle with Electric Car — Due Care —*
*Negligence — Instructions.*

In this case, which was an action for personal injuries occasioned to the plaintiff
by a collision of the vehicle in which he was riding with an electric car of the
defendant company which came up from behind, the defendant's requests for
instructions, each of which disregarded the existence and possible effect of cer-
tain evidence which might negative the proposition contained in the request,
were rightly refused; and the instructions as to considering, in relation to the
due care of the plaintiff and the negligence of the defendant, the width and
slope of the street, the space occupied by the tracks, the amount of travel, and
all the surrounding circumstances were full and correct; and there was sufficient
evidence to warrant a verdict for the plaintiff.

THREE ACTIONS OF TORT, for personal injuries occasioned to
the plaintiffs by the alleged negligence of the defendant com-
pany in operating one of its cars on Shrewsbury Street in
Worcester.    Trial in the Superior Court, before *Lawton*, J., who
allowed a bill of exceptions, in substance as follows.

At the place of the accident there were double tracks.    Cars
passed frequently.    There was evidence that the driver and the
other plaintiffs, who were riding in a Goddard buggy, could not
see the car, and had no knowledge or warning of its approach
until it was upon them.    The plaintiffs contended that the rear
wheel of their carriage was passed by the car before they noticed
its approach, and thereupon they turned the horse to the right
and so cramped the wheel that the car came in contact with the
rim of the forward wheel; and they offered evidence that the
carriage was proceeding slowly, outside the rails and on the right
hand side.

The defendant contended that the plaintiffs turned their horse
to the left and on to the track when the car was about ten or

fifteen feet behind them, and that thereafter all was done by the motorman that was possible, to avoid the collision, and that the car afterwards came in contact with the hub of the forward wheel.

The defendant offered evidence that the car was going at a rate of speed of about six miles an hour, and that prior to the collision, and for a distance of about sixty-five feet, signals were given by the motorman by a continuous clanging of the gong, and by shouting.

The plaintiffs offered evidence of a negative character that the car was going at a rapid rate of speed, and that the signals were not given and the gong was not rung.

The defendant requested the judge to rule as follows:

1. If the jury find that the plaintiffs' vehicle was passing along at the side of the tracks, where, if they had proceeded in a straight line, they would have been safe, and if the plaintiffs, or the driver, by their or his own choice or volition, turn on to the tracks in front of the car, without observing its approach, then the plaintiffs cannot recover.  2. If the carriage of the plaintiffs was proceeding along in a line outside the tracks in a place of safety, then the operators of the defendant's car had a right to assume that the plaintiffs would remain in a place of safety, and not turn on to the tracks, and there was no negligence in permitting the car to proceed at its ordinary rate of speed.  3. If the driver of the vehicle was paying no attention to the approaching car, but knew that cars were likely to approach from behind, and he assumed that he was in a place of safety and was proceeding, then, if the carriage was struck by a car approaching from behind, the plaintiffs cannot recover.  4. There is no evidence that the car was running at any excessive rate of speed.  5. If the carriage of the plaintiffs was turned on to the tracks in front of the car, and if the motorman then did all he could to avoid the accident under the contingency, then the plaintiffs cannot recover, since; if the vehicle was proceeding in a line of safety outside the tracks, and if the car passed the rear end of the carriage in safety, and the contact was with the front end of the carriage, then the collision was due to the act of the plaintiffs and not the defendant.  6. There is no evidence that the motorman failed to ring his gong, or give adequate signals of the approaching car.

The judge refused to give the rulings requested by the defendant, but instructed the jury as follows:

" The plaintiff Tashjian is the one who sat upon the left and who received the most injury, according to the accounts given by the plaintiff. The second plaintiff, Michael Caloosdian, is the one who sat in the middle and drove, and received the injury as he says. The third one, George Oozoonian, is the one who sat upon the right and received the injury to his leg. The cases have been tried together, and they stand or fall together; that is to say, if you find the defendant liable to any one, you would necessarily find the defendant liable to all of them, although the amount of damage, of course, would be different. . . .

" If you reach the question of damages, there are then three cases which you must consider carefully and how much damages each one is entitled to. . . . You must consider carefully, and satisfy yourself by a fair preponderance of the evidence, the first fundamental necessary prerequisite, namely, that the plaintiffs were in the exercise of due care, and whether they were in the exercise of due care is for you to say upon all the evidence, and on the consideration of all the circumstances in which they then found themselves. . . . In other words, you are to consider the street, its width, its slope, the space covered by the tracks, and the space now occupied by the tracks, the surroundings and amount of travel. . . . They cannot be held to say that they thought they were out in the woods, in the wilderness to use an extreme illustration. Due care in a place where there was almost no travel, where the electric cars passed once in every half hour, would be one standard, and the standard of due care that you would impose upon them in the most thickly settled portion of Worcester would be quite another thing. Due care would depend on what they could do in that particular street, and it would depend very largely upon the condition of the street itself, as to whether it were a wide street or a narrow one, whether it was perfectly level or whether it was a sloping street, and whether the electric cars were going up hill or down. . . .

" The counsel for both parties agree substantially that the accident must have taken place in one of two ways. . . . I will say that there are certain facts not disputed, and those facts

are that the three plaintiffs were driving in a buggy along the right hand side of the street outside the tracks, and it does not appear to be disputed that they were driving at a reasonable rate of speed, at a walk or slow trot. . . . It is stated on the part of the defendant, and it has brought evidence to satisfy you that shortly before this car reached them the plaintiffs turned the horse to the left, or the horse did go to the left directly, either at right angles or diagonally or directly across the tracks. And the defendant contends that such action was negligence on the part of the plaintiffs. If that were so, I should still say to you that it was a question for you to find upon all the circumstances whether that was negligence. Because it depends largely, then, upon the surrounding circumstances whether the cars were frequently passing through that street, whether the car came quietly along and without warning, as to whether they were in exercise of due care. It would be for you to say, under the circumstances, if you should find that as a matter of fact the men did turn to the left, and you should further find that the car was being driven at a high rate of speed, or suffered to go at a high rate of speed down this incline and the bell not being rung, it would then be for you to say whether that was fair judgment for a man, considering the part of the town that he was in, considering the general travel through there which he is supposed to know, and considering the amount of travel there was there at that time, and considering the question whether there was any necessity or any propriety in his leaving the right hand side of the road where he was, and going over to the other side. It is for you to say whether under those circumstances, if it was due care for him to turn without examination, without looking to see where he was going, to see if the road was clear, and to see if he could safely do it. If you should come to the consideration of that condition of affairs, it is for you to consider whether he was in the exercise of due care if you should believe that he did make that turn.

" They certainly have the right, as you very well know, to the whole road, subject to the care which every reasonable man has, and to a reasonable method of exercising that care. There is no law that compels him, unless he is passing a team, to stick

to one side of the road or the other.   He can go from one side to the other ; but when he undertakes to do it, as well as when he travels straight ahead, it is for you to say from the facts whether he was then observing due care.

"If you are satisfied that the plaintiff at the time just preceding the accident, at the moment of the accident, was in the exercise of due care, it is for you to say further whether or not the defendant was negligent, that is to say, it is necessary for you to say whether the plaintiff was in the exercise of due care.

"It is necessary for you to ask yourself the question, and to answer, Was the defendant negligent? . . . You are to take into account the circumstances of the case, because the electric cars have no peculiar right in the street except such as arise from the very nature and necessity of the case.   Of course they have the right of way, as we say, from the necessity of the case ; they cannot jump their track, they cannot turn to the right or the left, but they are obliged, like any other travellers, to consider the nature of the vehicle which they are managing, that it is a large, heavy vehicle.   They are to consider the circumstances in which they find themselves at any particular point on their journey or on their trip.   They are bound, as is the plaintiff, to consider the nature of the thoroughfare, as to its being wide or narrow, as to its being travelled a great deal or having a few people on it.   They are to consider the fact whether at the particular moment there are teams anywhere in sight.   They are to consider the speed at which the team is going in order to avoid an accident. ' Your own common sense tells you that they are bound as they approach any covered team to consider the fair probabilities of its being possible for this team to get out of the way easily.   If it is not clear, a perfectly clear case, that the team is out of the way, they are to consider, in other words, the circumstances in which they then find themselves, and the general condition of the street and of travel at that point.   They are obliged, in the exercise of prudence, to apprize people of their motion, to ring the gong.   There is no law that says they shall ring it at every interval of a second during the whole progress of their trip or at intervals of a minute, but they are obliged continually to apprize people of their coming, for the simple reason that

people must get out of their way, that they cannot avoid people in front of them. The motive power which impels them, its limitations, the weight of momentum, the difficulty of stopping too quickly if it gets under a great headway, the fact that they are going down hill, or going up hill, or going on level ground, those facts must be taken into account by you, and considered by you, as facts which affect the quickness with which they can stop. You must ask yourselves, Was that motorman, who for the time being was the electric road itself, was that motorman in the exercise of due care, or was he negligently managing and running that particular car? . . .

" If you find for the plaintiffs in this case, you are to ascertain the nature of their damages and the amount of which they are entitled to recover respectively. In ascertaining that, you are to take into account the expenses to which they have been put; the loss to which they have been subjected, and the suffering that they have experienced, and any question of impaired capacity of earning their living. . . . One request for instruction I will give, but in a modified form: 'If the carriage of the plaintiff was turned on to the track in front of the car, and if the motorman then did all he could to avoid the accident under the circumstances, and if he then was running at a reasonable rate and reasonably giving notice of his approach, then the plaintiff cannot recover.' "

To the refusal of the judge to rule as requested, and to the rulings as given, the defendant excepted.

The jury returned a verdict for the plaintiff in each case; and the defendant alleged exceptions.

*C. C. Milton*, for the defendant.

*M. M. Taylor*, for the plaintiffs.

KNOWLTON, J. The defendant's requests for instructions were all rightly refused. Each of them disregards the existence and possible effect of certain evidence which might negative the proposition contained in the request.

The first instruction could not be given, because there was evidence that the driver and the other plaintiffs could not see the car, and had no knowledge or warning of its approach until it was upon them, and the jury might have found that the car was running rapidly, and that the motorman was

negligent in running upon them without giving them warning while they were in the exercise of due care.

The second could not be given, because it cannot be said, as matter of law, that a motorman has a right to assume that a person driving along by the side of the car tracks without any reason to suppose that a car is following close behind him will continue in the same line and will not attempt to cross the track. These requests must be considered in reference to the evidence in all its different phases. The conduct of the motorman should have been influenced somewhat by the fact that the vehicle before him was a carriage with a top, whose occupants could not see the road behind them. Before running forward at such speed that he would be likely to strike a wagon that might turn across the track, a motorman should give warning of the approach of the car, unless he has good reason to believe that the occupants of the wagon are aware of it. *Robbins* v. *Springfield Street Railway*, 165 Mass. 30.

There was evidence from which the jury well might find that the car was running at a rate of speed which was excessive in view of the fact that a horse and covered carriage were going along just before it very near to the side of the track.

The fifth instruction could not be given, because it leaves out of consideration possible negligence of the motorman in running rapidly, and without giving warning, close behind a covered wagon whose occupants might be supposed to be ignorant of the approach of the car, and to be liable to turn across the track while driving in the ordinary way.

There was evidence from several witnesses tending to show that the motorman failed to ring his gong or give signals of the approach of the car until too late to enable the plaintiffs to avoid a collison.

The instructions given were full and correct, and there was sufficient evidence to warrant verdicts for the plaintiffs. See *White* v. *Worcester Consolidated Street Railway*, 167 Mass. 43; *Ellis* v. *Lynn & Boston Railroad*, 160 Mass. 341; *Benjamin* v. *Holyoke Street Railway*, 160 Mass. 3.

*Exceptions overruled.*