CHARLES SEELE *vs.* BOSTON AND NORTHERN STREET
RAILWAY COMPANY.
WINFIELD P. PIERCE *vs.* SAME.
ANSEL B. PIERCE & another *vs.* SAME.

Middlesex.   November 15, 1904. — January 6, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Negligence,* Contributory, In driving.

For one driving in a covered wagon with projecting sides cutting off the view ex-
cept in front, after proceeding by the side of a street car track for three quarters
of a mile, to turn suddenly across the tracks without looking or listening and
with nothing to give assurance that a car is not near, going so slowly that con-
siderable time must be taken in crossing the tracks, is negligence as matter of
law, and a person thus driving whose team is struck by an electric car coming
from behind at an excessive rate of speed cannot recover from the railway com-
pany for the injuries incurred.   Nor can his employer sitting by his side.

THREE ACTIONS OF TORT, the first by the driver of an under-
taker's wagon, the servant of Ansel B. Pierce and Winfield P.
Pierce, copartners doing business as undertakers, the second by
one of the partners who was sitting by the driver in the wagon,
and the third by both partners as owners of the wagon and the
horses, for injuries alleged to have been caused by the negligence
of the defendant's servants in running an electric car at an ex-
cessive rate of speed against the wagon as it was crossing the
defendant's tracks on Main Street in Melrose for the purpose of
turning into Sylvan Street in that city.   Writs dated May 26,
1902.

In the Superior Court the cases were tried together before
*Bishop,* J.   At the close of the plaintiffs' evidence, the judge
ruled that the plaintiffs were guilty of contributory negligence,
and ordered verdicts for the defendant.   The plaintiffs alleged
exceptions.

*F. S. Hesseltine,* (*R. R. Gilman* with him,) for the plaintiffs.
*D. E. Hall,* for the defendant.

BARKER, J.   In the first two actions the plaintiffs sue for
damages for personal injuries.   The third action is for damages

to the horses and wagon with which the plaintiffs in the first two actions were travelling on the highway when the accident happened. They were on Main Street coming from Melrose on the west side of the road which was the right hand side as they were driving, and the centre of the road was occupied by double tracks of the defendant's railway. They were in a two horse undertaker's wagon, preceding a funeral procession which was a considerable distance in the rear. The wagon was without windows and had a covered top, closed sides and rear, with an inside partition separating the driver's seat from the interior, which was completely filled with flowers. The sides projected forward of the seat so that the driver could not look back of the wagon without leaning outside of the wagon. Opposite the intersection of Sylvan and Main Streets the team was to cross the tracks to the left of the driver in order to enter Sylvan Street from the opposite side of Main Street. Some three fourths of a mile before reaching Sylvan Street the travellers had looked back to see the funeral procession which was then about an eighth of a mile in their rear, and on so looking back they saw no electric car. Just before and as they turned across the car tracks their horses were walking. For seventeen hundred feet back of the team Main Street was straight and with no buildings or cross streets, and with the view unobstructed. The travellers before turning the team across the track did not in any way look to see whether a car was approaching from behind, and they had not looked back since they did so when they were three fourths of a mile from the place where they intended to cross the tracks. When they turned to the left to cross the tracks — the horses walking — the team was struck by a car coming from behind, and which hit the team between the horses and the foot board or under the seat. Before the crash they did not hear the car and did not know that one was approaching. The evidence shows that there was another team on the street, going in the same direction and about two hundred feet behind the one which was struck, and that as the car passed the rear team the gong on the car was sounded. A witness who stood on the corner of Sylvan Street and saw the car and team approaching testified that the noise of the car "was a good loud noise — such a noise as a car makes going at a good speed." Other witnesses who were in the

vicinity testified that they heard no bell rung or gong sounded as the car approached the team, but that they could not say it was not rung or sounded. There was evidence that the car was being run at an excessive rate of speed.

The burden was upon the plaintiffs to show that they were in the exercise of due care. We think the evidence did not justify such a finding. To drive for three fourths of a mile in a wagon which enabled the driver to see only in front, the team being within three or four feet of a street railway track upon which a car might at any moment come up from behind the team, and then to turn suddenly across the track without looking or listening, and with nothing to give assurance that a car is not near, and with the team going so slowly that considerable time must be taken in crossing the tracks, is to act in disregard of a known danger. We think that in the present instance it was contributory negligence. See *Saltman* v. *Boston Elevated Railway, ante,* 243.

*Exceptions overruled.*