AGENOR E. WILLIAMSON *vs.* OLD COLONY STREET RAILWAY
COMPANY.

Plymouth.    January 18, 1906. — March 5, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Negligence.    Street Railway.    Practice, Civil*, Exceptions.

In an action against a street railway company for personal injuries, it appeared,
that the plaintiff was driving four horses attached to a large van filled with fur-
niture, which had a covered top and closed sides without windows, that the main
body of the van projected on each side over the wheels so that its width above
the running gear was six feet, that, the inside of the van being filled with furni-
ture, the plaintiff from the driver's seat could not look back and see the street
behind him, that the length of the team including the wagon and horses was
thirty-seven feet, that double tracks of the defendant occupied the centre of the
street and the plaintiff was driving on the left hand side of the tracks because he
preferred the macadam on that side to the stone pavement on the other side,
that, as he was driving at a slow trot, a two horse lumber team was approaching
on the same side, and he turned to the right and started to drive diagonally
across the tracks at a long angle, that while crossing at the same rate of speed
as before he was listening and looking out for his team and heard no sound of
an approaching car, that a car of the defendant coming from behind on the right
hand track struck the wagon between six and seven feet from the rear of it,
lifted it up on the right hand side about a foot and a half, pushed it eight or ten
feet and rolled it over, that the street was practically straight with the view
unobstructed for a distance of eighteen hundred feet in each direction from the
place of the accident, that the car which struck the plaintiff's wagon was draw-
ing another car which had no motor, and that besides the motorman on the
front platform of the forward car there was a motorman on the front platform
of the rear car whose duty it was to look after the trolley of the forward car
and to use the brake when needed in going down hill.    There was testimony
that the plaintiff's moving team made considerable noise.    *Held,* that there was
evidence to warrant a finding that the plaintiff was in the exercise of due care
and that the defendant's motorman was negligent.

If the motorman of an electric car, running on the right hand track of double rail-
way tracks which occupy the centre of a straight and unobstructed street, sees
ahead of him a large covered furniture van going in the same direction on the
left hand side of the tracks and a lumber team approaching it on the same side
from the opposite direction, it is his duty to notice the teams and to consider the
probability that the furniture team will turn to cross the tracks to the right
hand side of the street, especially if he perceives that the driver of that team is
so seated that he cannot see a car approaching from behind.

One driving a loaded covered wagon from the seat of which he cannot see the street
behind him, if he listens and hears no sound of an approaching car before start-
ing to cross the tracks of a street railway, has a right to suppose that the motor-
man of a car coming from behind on a straight and unobstructed track will give

him time to cross the tracks after he has started to do so and will not run him
down while he is crossing.

It is within the discretion of a presiding judge to refuse to make a ruling based on
a particular portion of the evidence.

TORT for personal injuries from an electric car of the defend-
ant running into a four horse furniture team which the plaintiff
was driving in the daytime of April 22, 1903. Writ dated
March 11, 1904.

At the trial in the Superior Court before *Harris,* J. the de-
fendant at the close of the evidence asked the judge to make
among others the following rulings:

"1. Upon all the evidence the plaintiff is not entitled to
recover.

"2. There is no sufficient evidence that the plaintiff was in
the exercise of due care, and he cannot recover.

"3. There is no sufficient evidence of negligence on the part of
the defendant, and the plaintiff cannot recover."

"6. To listen when, under the circumstances, one would not
hear and could not have expected to hear an approaching danger
is not due care.

"7. If the plaintiff did not look for a car coming upon him
from the rear, and, because of the noise made by his own team,
could not have heard such a car without stopping, and did not
stop, he was not in the exercise of due care and cannot recover."

The judge refused to make any of these rulings, and submitted
the case to the jury, who returned a verdict for the plaintiff.
The defendant alleged exceptions.

*Asa P. French,* (*J. S. Allen, Jr.* with him,) for the defendant.

*C. R. Clapp,* (*H. S. Davis* with him,) for the plaintiff.

KNOWLTON, C. J. This is an action to recover for personal
injuries, resulting from collision between a barge, driven by
the plaintiff, and a car of the defendant. The accident happened
on Hancock Street in Quincy, at about half past eight o'clock in
the morning of a clear day. Double tracks of the defendant's rail-
way occupied the centre of the street. The street was forty-four
feet wide between the sidewalks, and was practically straight,
with the view unobstructed for a distance of eighteen hundred
feet in each direction from the place of the accident. The plain-
tiff was driving a four horse barge filled with furniture. He was

a steady man, fifty-six years of age, of good sight and hearing, and of many years' experience in driving horses. The barge was without windows, and had a covered top with closed sides. The inside was completely filled with furniture, so that the plaintiff, from the driver's seat, could not look back and see the street be-. hind him. The main body of the barge projected, on each side, over the wheels, so that its width above the running gear was six feet. The length of the team — wagon and horses — was thirty-seven feet.

The plaintiff was driving on the left hand side of the tracks, because he preferred the macadam which was laid there to the stone pavement on the right hand side of the tracks. He was driving at a slow trot, and being about to meet a two horse lumber team which was coming on the same side, he turned out to the right, and determined to cross over to the right hand side of the railway tracks. Accordingly, he started to drive diagonally, at a long angle, across the tracks, when the defendant's car, coming behind him on the right hand track, collided with the barge and caused the injury. The evidence tended to show that the car struck the barge between six and seven feet from the rear end of it. This car was drawing another one which was attached to it, and which had no motor. Besides the motorman on the front platform of the forward car, there was a motorman on the front platform of the rear car, whose duty it was to look after the trolley of the forward car, and use the brake when needed in going down hill.

The plaintiff testified that he drove, while crossing, at the same rate of speed as before, and that he was " listening to see what he could hear," and looking out for his team. He heard no sound of an approaching car, and did not know that there was one behind him until his wagon was struck. The evidence tended to show that the wagon was lifted up, on the right hand side, about a foot and a half, pushed eight or ten feet, and rolled over. There was testimony that the plaintiff's moving team made considerable noise.

We are of opinion that there was ample evidence to warrant the jury in finding that the defendant's motorman was negligent, and that the plaintiff was in the exercise of due care. It was impossible for the plaintiff to see the car coming behind him

without stopping his team and getting down from his seat. The only things that he could have done, for greater precaution, were to stop his team and get off and look behind him, or stop his team and listen while his wagon was at rest. The latter act would hardly have promoted his safety, for if he had listened and heard nothing, the common speed of electric cars, upon unobstructed straight streets in the suburbs of. Boston, might well bring up a car from a point where its quiet movement would not be heard, so that it would overtake him before he could start his long heavy team and get across the double tracks at a convenient angle for crossing. It was the duty of the motorman to notice the apparent movement and consider the probable movement of teams travelling before him in the same direction, especially if the driver was so seated that he could not see a car approaching behind him. The driver of such a team as this has a right to suppose that a motorman, coming from behind, will give him time to cross the tracks after he has started to do so, and not run against him while he is crossing. While it is his duty to use reasonable care for his own safety, he may trust something to the expectation that others will do their duty. *White* v. *Worcester Consolidated Street Railway*, 167 Mass. 43. *Kerr* v. *Boston Elevated Railway*, 188 Mass. 434. *Robbins* v. *Springfield Street Railway*, 165 Mass. 30. *Tashjian* v. *Worcester Consolidated Street Railway*, 177 Mass. 75. *Vincent* v. *Norton & Taunton Street Railway*, 180 Mass. 104. *Sexton* v. *West Roxbury & Roslindale Street Railway*, 188 Mass. 139. The decision in *Seele* v. *Boston & Northern Street Railway*, 187 Mass. 248, relied on by the defendant, depends upon the view taken of the peculiar facts of that case, and is not intended to change the law stated in the other cases above cited.

The instructions requested were all rightly refused.

The sixth request called for an instruction upon an isolated part of the evidence, as to its bearing upon the plaintiff's care. The judge was not required to consider this testimony by itself, with the construction put upon it by the defendant. *Shattuck* v. *Eldredge*, 173 Mass. 165, 168, and cases cited.

*Exceptions overruled.*