E. M. LUNDIEN, Administrator, etc., Appellant, v. FORT DODGE, DES MOINES & SOUTHERN RAILWAY COMPANY, AND HOMER LORING AND PARLEY SHELDON, Receivers, Appellees.

Interurban railways: CROSSINGS: RIGHTS OF PARTIES: NEGLIGENCE: ASSUMPTION OF RISK. A traveler upon the highway and a railway company have equal rights in the use of a crossing; but when approaching a crossing so nearly at the same time with a car that in the exercise of reasonable care the traveler must know that he cannot cross in safety it becomes his duty to yield precedence to the car; not

because of any inferior right to use the crossing but because of the physical fact that both cannot cross at the same time, and the movements of the traveler are more easily controlled than that of the car. The mere fact, however, that a traveler sees a car approaching a crossing does not as a matter of law cast upon him the duty of waiting for it to pass, if he can reasonably expect to be able to cross before it arrives; and he does not assume the risk as a matter of law of his miscalculation if the car approaches at an excessive rate of speed and a collision occurs.

**Same:** CONTRIBUTORY NEGLIGENCE AS A DEFENSE.  One cannot place another in danger by his own negligence and then excuse himself on the ground that the injured party did not exercise care in extricating himself from the peril thus induced.

**Same:** NEGLIGENT OPERATION OF CAR: TRAVELERS: REQUIRED CARE.  It is the duty of an interurban railway company operating its cars for the accommodation of local traffic at highway crossings, to have the same under control when approaching a stopping place; and one about to cross its tracks at a point where it is accustomed to receive passengers may assume that a car will not be run at an excessive rate of speed, and he may assume that a motorman will observe a signal to stop; and attempting to cross the track after signalling the car to stop and while it was several hundred feet distant was not negligence as a matter of law.

**Same.**  The care required of a traveler when crossing a railway track can only be measured by considering the care he may rightfully expect the railway company will exercise in the operation of its cars.

**Same.**  One signaling an interurban car to stop at an accustomed stopping place for the accommodation of local traffic, while not thus acquiring the rights of a passenger, has taken the initial step to bring about that relation; and such signal is sufficient to charge the company with his intention of becoming a passenger, and with the duty of exercising reasonable care to avoid injuring him in taking him on board.

**Same:** NEGLIGENCE: LAST CLEAR CHANCE: EVIDENCE.  Where peril is so imminent to a person of ordinary prudence that injury seems probable if effort is not made to avoid it the doctrine of last clear chance applies; and liability for failure to exercise the required care cannot be avoided by the assumption that the party in peril will remove himself from the zone of danger.  In the instant case the question of whether the motorman of an interurban car exercised

reasonable care to stop the same after discovering decedent's peril was one of fact for the jury.

*Appeal from Webster District Court.*—HON. C. E. ALBROOK, Judge.

THURSDAY, MAY 14, 1914.

ACTION at law for recovery of damages for personal injury, resulting in the death of the intestate. From judgment entered on a directed verdict for defendant, the plaintiff appeals.—*Reversed.*

*Healy, Burnquist & Thomas,* for appellant.

*B. J. Price* and *Dyer & Dyer,* for appellee.

WEAVER, J.—The plaintiff's intestate was struck and killed by one of the defendant's trolley cars on a public crossing in Webster county. He had been visiting his mother, who resided a short distance west of the crossing, and was intending to take passage upon said car for his home in Ft. Dodge. The car was one employed in local traffic, and was accustomed to stop at all highway crossings to take on passengers. His mother and brother walked with him in the direction of the crossing, and stopped on the west side of the track until they discovered the car approaching from the south. The shed or platform where the passengers boarded the cars at that place was on the east side of the crossing and north of the highway. The country at this point is quite level, and the view along the track to the south was unobstructed for a distance of substantially a mile. The evidence for the plaintiff tends to show that when the car was still some six hundred or eight hundred feet to the south deceased, who had about one hundred and sixty feet to go, signaled the car to stop, and started on a run to make the crossing, and was struck while

still on the track near the east rail. There is evidence further tending to show that the car came on at a very high rate of speed until it reached the crossing, and the motorman did not succeed in bringing it to a stop until it had overrun the crossing a distance estimated at from three hundred to seven hundred feet. Negligence is charged in the operation of the car, in that the motorman was driving it at a high rate of speed and did not stop or reduce such rate when properly signaled by the deceased. It is also charged that the motorman was negligent in failing to stop the car when he saw the peril of the deceased, or in the exercise of reasonable care ought to have seen it. At the close of plaintiff's testimony the court sustained defendant's motion to direct a verdict on the ground that deceased was shown to have been guilty of negligence as a matter of law. From the judgment entered on the verdict so returned, the plaintiff appeals.

The motorman, testifying as a witness, says he saw the three persons, two men and a woman, standing on the west side of the track for a distance of practically a mile, and saw the deceased start and run toward the crossing, but says he did not see him signal. He adds, however: "It was our custom to stop at that crossing if any one was there. When I discovered Mr. Swenson running toward the track, the car was going about twenty miles an hour. There was an automatic air brake on the car. The brakes and controllers were in good working order, and the equipment was in good order. I knew if the man did not stop, he wasn't going to get across. When I saw him running I believed he was running into danger." It also appears or there is evidence to the effect that the emergency brake was not applied until immediately after an alarm whistle was sounded, and that such alarm was not given until the car was "at the south cattle guard or right on the crossing."

The principal question we have to consider is whether, after giving the plaintiff the benefit of the most favorable con-

struction of which the evidence is reasonably and fairly suscep-

**1. INTERURBAN RAILWAYS: crossings: rights of parties: negligence: assumption of risk.** tible in support of his alleged cause of action, it still presents a case upon which the deceased must be held chargeable with contributory negligence as a matter of law. Under the conceded facts the question of defendant's duty toward the deceased, as well as the duty of the deceased with respect to his own safety, presents a twofold aspect. In one he is to be considered from the standpoint of an ordinary traveler on the public highway, and in the other as a person approaching the railway company's stopping place or station to take passage on an approaching car which he has signaled to stop. If we consider the case from the first point of view the intestate and the railway company had equal rights in the use of the crossing. This is not inconsistent with the other rule that when a traveler and a railway car approach a crossing so nearly at the same time that as a reasonably prudent person the traveler knows, or ought to know, he cannot go ahead without imperiling his safety, he is bound to yield precedence to the car. This is not because his right to cross is less regarded by the law, but because of the physical fact that both cannot use the place of crossing at the same time, and it is but reasonable care that he give way to the car, the movement of which is less readily controlled than his own. *Gray v. R. R. Co.*, 143 Iowa, 276; *Gray v. R. R. Co.*, 160 Iowa, 1; *Earle v. Traction Co.*, 64 N. J. Law, 573 (46 Atl. 613).

The mere fact that a traveler as he approaches a crossing sees a car coming in his direction does not, as a matter of law, cast upon him the duty of waiting for it to pass, for if the car is at such distance that he may reasonably expect to cross in safety before its arrival, he may do so without becoming chargeable with want of due care, nor does he as a matter of law assume the risk of mistake in his calculation if by reason of the approach of the car at an excessive or negligent rate of speed a collision occurs. *Patterson v. Townsend,* 91 Iowa, 725; *Bruggeman v. R. R. Co.,* 147 Iowa, 204; *Adams v.*

*Electric Co.*, 138 Iowa, 487; *Railway Co. v. Carroll*, 91 Ill. App. 356; *Chauvin v. R. R. Co.*, 135 Mich. 85 (97 N. W. 160); *McDermott v. Ry. Co.*, 89 App. Div. 214 (85 N. Y. Supp. 807); *Campbell v. Traction Co.*, 137 Cal. 565 (70 Pac. 624); *Ward v. Ry. Co.*, 132 Iowa, 578; *Robkin v. Joline* (Sup.), 114 N. Y. Supp. 98; *Vandenbout v. Ry. Co.*, 129 App. Div. 844 (114 N. Y. Supp. 760).

It is also a well-settled principle in all cases where the question of negligence is involved that one party cannot, by his want of care, put the other in danger and then excuse

2. SAME: contributory negligence as a defense.

himself from liability on the ground that the one so injured did not use good judgment in extricating himself from a peril so induced. *Gibbons v. Ry. Co.*, 155 Pa. 279 (26 Atl. 417); *Kern v. Ry. Co.*, 141 Iowa, 631.

In this case as we think there can be no question there was evidence to justify a finding of the defendant's negligence. Indeed it would take a most arbitrary court or reck-

3. SAME: negligent operation of car: travelers: required care.

less jury to come to any other conclusion. The car was one which was operated to accommodate local traffic, and stopped at all street crossings on signal of persons wishing to take passage. As a matter of common knowledge, a car being operated in this manner is of necessity slowed down as it approaches a stopping place, and brought under control by use of brake or controller. The evidence for plaintiff, we have already said, tends to show that when deceased took cognizance of the approach of this car it was some seven hundred to eight hundred feet away as he started to cross over to the proper side of the track for boarding it, a distance which is estimated at one hundred and sixty feet. Just as he started, and as he moved at a rapid run in that direction, he continued to signal for a stop, yet the car came on at such excessive rate of speed that it not only struck and killed him in the act of crossing, but continued a further distance of several hundred feet before it could be brought to a stop. These cir-

cumstances speak for themselves, and indicate that the car
was being operated in a reckless manner.   It was not for
the trial court, nor is it for this court, to say that the evidence
for the plaintiff in this behalf was untrue, or that the jury
should not credit it or draw therefrom an inference of negli-
gence.   Assuming, then, that the car was coming at a negli-
gent rate of speed, it is not, we think, within the province
of the court to say as a matter of law that deceased saw and
knew of this negligence, or that he ought to have seen and
known it.   It is a manifestly just proposition that he could
rightfully assume that the motorman would take cognizance
of his signal and bring his car to a stop, or, if for any reason
the motorman proposed to ignore the signal, that the car
would at least make the crossing at a reasonable rate of speed.
It is shown that the car was approaching from the south upon
a considerable stretch of straight track over level bottom land.
In other words, it was coming "head on," and the only
view of it to persons at the crossing was directly in front.
Such a position is obviously the most difficult one from which
the observer can obtain an idea of the speed of an approach-
ing car or train.   There is no showing that deceased watched
the car sufficiently to appreciate its speed, and we have no
right to assume that he did.   Nor was he required so to do if
the distance was such that, assuming the car to be moving in
a reasonable manner, he had time to cross in safety.   Cer-
tainly we cannot undertake to say as a matter of law that with
the car eight hundred feet, or even five hundred or four
hundred feet away, approaching a crossing where it was to
stop, deceased could not, as a reasonably prudent person,
act upon the belief that he had ample time to take the other
side of the track.   To so hold would be to set at naught many
precedents, and to establish a rule which, if adhered to, will
render recovery for injury in any crossing accident prac-
tically impossible.   Upon this point we cite a few authorities.

In *Wolf v. Suburban Ry. Co.*, 50 Or. 64 (85 Pac. 620,
91 Pac. 465, 15 Ann. Cas. 1181), a traveler on the highway

undertook to cross the railway track. There was no ordinance limiting the rate of speed, and when deceased came to the track a car was approaching downgrade at a distance not exceeding two hundred feet, and probably not more than one hundred and sixty-five feet, and in attempting to cross he was killed. The only negligence charged was the excessive speed of the car, and a recovery of damages was sustained. In so holding the court quotes approvingly from *Callahan v. Traction Co.*, 184 Pa. 425 (39 Atl. 222), as follows: "A person about to cross a street at a regular crossing is not bound to wait because a car is in sight. If a car is at such distance from him that he has ample time to cross if it is run at its usual speed, it cannot be said, as matter of law, that he is negligent in going on."

In *Hamilton v. Ry. Co.*, 201 Pa. 351 (50 Atl. 946), as plaintiff came to the track, he saw a car coming at a distance of two hundred and thirty feet. He noticed that the motorman was not at the brake, and was looking in another direction, yet he drove ahead and was injured. The court held that the question of contributory negligence was for the jury, saying, among other things, that plaintiff was "not required to act upon the presumption that the motorman's inattention to his duties when leaving Fifth avenue would continue until the High street crossing was reached. The opposite conclusion was the reasonable one, and would justify the plaintiff in proceeding to cross the track." In the case of a street railway it has often been held that the motorman ought to have his car under control as it passes over a crossing. *Ry. Co. v. Gentry*, 147 Ind. 408 (44 N. E. 311, 37 L. R. A. 378, 62 Am. Rep. 421). The reason for such rule is equally applicable to the operation of an interurban car which is run to accommodate local travel, stopping at all public crossings where passengers may be waiting, and this reasonable requirement is a material consideration where alleged contributory negligence is relied upon by the defendant.

In *Traction Co. v. Jacobson*, 217 Ill. 404 (75 N. E. 508),

the plaintiff, seeing an approaching car at a distance of three hundred feet, turned his team to cross the track and was injured. Speaking of the claim that plaintiff was himself negligent, and after quoting his testimony about the distance of the car and his belief that he had time to cross in safety, the court says:

He was bound to exercise a reasonable judgment in view of all the circumstances; and the court in passing on the motion [for a directed verdict], was required to consider all the evidence, including the distance of the car from the wagon, the rate of speed, and all the circumstances. We cannot say that in so considering it the evidence necessarily led to but one conclusion; but we think the question whether, under all the circumstances, appellee believed, upon reasonable grounds, that he had time to get across the track before the car would reach him was proper to be submitted to the jury.

The Supreme Court of Kansas, speaking of the duty of a traveler about to cross the track of an electric railway, says:

The requirement of the law that a man shall look and listen means no more than that he shall observe and estimate with reasonable accuracy his distance from the car and the speed of its oncoming. He is then to make a calculation and comparison of the time it will take  .  .  .  to cross the track, and if, under the same circumstances, a reasonably prudent person would attempt to cross at a given rate of speed, he will not be negligent in doing so. It is true that a reasonably prudent man may be mistaken or be deceived, but if so, and if his conclusion from the facts as they appear to him be erroneous and an injury result, he is nevertheless guiltless of contributory negligence, for the law does not measure human conduct in such cases by any higher standard of care than that which such a man would exercise; and whether or not a prudent man would accept the hazard is generally a question of fact for the jury.

*Kansas City-Leavenworth Ry. Co. v. Gallagher,* 68 Kan. 424 (75 Pac. 469, 6 L. R. A. 344).

Equally in point is the following from the New Jersey court:

A jury may well say that he who crosses in front of a trolley car provided with a motorman may assume that it is furnished with the means of stopping or reducing speed. Then there was a question for the jury in this case whether a prudent man, upon such an assumption, might not judge it safe to cross in front of a trolley car 300 feet away, although coming at a great and illegal speed. Upon the assumption of the existence of means to reduce the speed and to stop, and of a servant employed to make use of such means, it would be absurd to say that one was bound to refrain from crossing for fear the servant would not make use of the means.

*Traction Co. v. Lambertson,* 59 N. J. Law, 299 (36 Atl. 101). See, also, *Lawler v. Ry. Co.,* 72 Conn. 74, 82 (43 Atl. 545).

This court in a similar case has said:

Much is said in argument about the question whether the rule requiring a person about to cross the track to stop, look, and listen for an approaching car, and whether the rule applicable to a railroad operated by trains and steam locomotives should apply to an electric railroad. That question is not in this case. There is no claim that plaintiff did not see the approaching car. He saw it when it was three hundred feet away from the crossing. The question is, Did he use proper care in determining whether he could safely cross the track? That was a fair question under the evidence for the jury.

The care and caution of a pedestrian at a public crossing can be properly measured only by taking into consideration the care and caution he has a right to expect will be exercised by a motorman operating a car over

4. SAME.

the same crossing. *Saylor v. Traction Co.,* 40 Ind. App. 381 (81 N. E. 94); *Railway Co. v. Snell,* 54 Ohio St. 197 (43 N. E. 207, 32 L. R. A. 276); *Traction Co. v. Jacobson,* 217 Ill. 404 (75 N. E. 508); *Williamson v. Ry. Co.,* 191 Mass. 144 (77 N. E. 655, 5 L. R. A. (N. S.) 1081); *Meng*

v. Ry. Co., 108 Mo. App. 553 (84 S. W. 213); *Transit Co. v. Seigrist,* 96 Tenn. 119 (33 S. W. 920); *Fallon v. Ry. Co.,* 201 Mass. 179 (87 N. E. 480); *Greene v. Ry. Co.,* 119 Ky. 862 (84 S. W. 1154, 7 Ann. Cas. 1126); *Bertsch v. Ry. Co.,* 68 App. Div. 228 (74 N. Y. Supp. 238); same case approved in 173 N. Y. 634 (66 N. E. 1104); *Traction Co. v. Lambertson,* 59 N. J. Law, 297 (36 Atl. 100).

If the circumstances *as they reasonably appear to the traveler* justify him in believing he can cross in safety, he is not guilty of negligence as a matter of law because of a mistake in judgment. *Ward v. Ry. Co.,* 132 Iowa, 578; *Powers v. Ry. Co.,* 143 Iowa, 434; *Kern v. Ry. Co.,* 141 Iowa, 631.

In *McDivitt v. Ry. Co.,* 141 Iowa, 699, we said: ''One of the important circumstances is the distance of the oncoming car; and another is its speed. The distance can always be estimated with sufficient accuracy for the purposes of prudence. The speed, however, may be deceptive.'' To the same point the court in *Murray v. Transit Co.,* 108 Mo. App. 501 (83 S. W. 995), affirmed by the Supreme Court of that state in 135 S. W. 19, says: ''A man might easily misjudge the speed of a car, or its distance from him, after straining his senses to ascertain whether he could, with safety, venture on the track, might make an honest mistake, and under an erroneous impression concerning the car's speed . . . go forward and be hurt. Whether plaintiff's misapprehension was induced by carelessness or by a deception of the senses, or an error of judgment, was . . . for the jury.'' See, also, *Geist v. Ry. Co.,* 91 Mich. 446 (51 N. W. 1112); *McVean v. Ry. Co.,* 138 Mich. 263 (101 N. W. 527).

The authorities, sustaining the view thus far expressed, are too numerous to attempt their exhaustive citation. We close this branch of the discussion with the citation of one other case which seems to us peculiarly appropriate and authoritative. In *Railway Co. v. Van Steinburg,* 17 Mich. 99, the plaintiff was proprietor of a hotel near a railroad station at which he was in the habit of meeting trains and

soliciting customers. At the time in question he waited at his place of business until an approaching train sounded the station signal, when he started for the station and was struck and injured by the train on the crossing. He brought action for damages, assigning the reckless speed of the train as negligence. One of the principal points urged upon the appeal was that plaintiff, who knew the train was expected, waited until he heard its whistle and then left his hotel and crossed the track on his way to the station platform, was negligent as a matter of law. Judge Cooley, writing the opinion, thoroughly discusses the facts and the law, and finds the question to be one for the jury. He says:

Negligence, as I understand it, consists in want of that reasonable care which would be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury. The inquiry is therefore one which must take into consideration all these circumstances, and it must measure the prudence of the parties' conduct by a standard of behavior likely to have been adopted by other persons of common prudence. Moreover, if the danger depends at all upon the action of any other person under a given set of circumstances, the prudence of the party injured must be estimated in view of what he had a right to expect from such other person, and he is not to be considered blamable if the injury has resulted from the action of another which he could not reasonably have anticipated. Thus the problem is complicated by the necessity of taking into account the two sets of circumstances affecting the conduct of two different persons, and is only to be satisfactorily solved by the *jury placing themselves in the position of the injured person,* and examining those circumstances as they then presented themselves to him, and *from that standpoint* judging whether he was guilty of negligence or not. It is evident that such a problem cannot usually be one upon which the law can pronounce a definite sentence, and that it must be left to the sifting and determination of a jury.

If it be true, as Judge Cooley says, that the prudence of the party injured must be "estimated in view of what

he had a right to expect from such other person,'' it was open to the jury, under the evidence in this case, to find that the deceased signaled the car and had a right to expect it to stop and take him on board. It could further have found that, had the motorman performed his admitted duty and brought the car down to a speed which would permit such stop, there would have been no collision, and plaintiff would have been unhurt. As was said in the Connecticut case above cited, deceased could rightfully assume that the car was supplied with suitable appliances to reduce the speed or to stop, and that the servant in charge of the car would make use of them.

Next let us refer briefly to the right of the deceased as a person intending to board the car and giving notice thereof to the defendant's servants by proper signal. This phase of the case has been already touched upon incidentally. That deceased, having hailed a car which was being operated for the benefit of local travel and was accustomed to stop for passengers at that crossing, occupied a different relation toward the company than an ordinary traveler on the highway is well settled. It would be going too far to say that the mere fact of hailing the car clothed him with the character of a passenger on the company's road, or entitled him to the same degree of care and protection at its hands, but, to say the least, it was the initial step in bringing about that relation, and was sufficient to notify the motorman that deceased was approaching the crossing for the purpose of becoming a passenger, and such notice was sufficient to charge the company through such servant with the duty of exercising reasonable care not to endanger him in putting himself in position to be taken aboard. We are not without authority upon this proposition. We have ourselves held that one who enters a railway station intending to take a train soon to depart is entitled to the protection at the hands of the company's servants, although he has not purchased a ticket. *Allender v. R. R. Co.*, 37 Iowa,

5. SAME.

264. See, also, *Dieckmann v. R. R. Co.*, 145 Iowa, 250. In a
Wisconsin case the plaintiff, desiring to board an electric car,
went to the crossing or stopping place where the car was
accustomed to stop on display of a signal provided for that
purpose. The road was double tracked, and the signal was
between the tracks. When plaintiff heard the car coming,
he went to the signal and displayed it, and then, instead of
waiting until the car stopped and walking around it to the
entrance, he attempted to cross in front of it as it came on,
and was struck. The court held that he was not guilty of
contributory negligence as a matter of law. I cite the case
at this point principally for its statement of the distinction
between an ordinary pedestrian and a person who is making
a *bona fide* effort to avail himself of the transportation which
the car is supposed to furnish. A person of the latter class
in the exercise of reasonable "care might well believe that, in
the face of such implied invitation to cross, the movements
of passing trains would be so regulated or adjusted as to per-
mit his crossing in safety." *Karr v. Traction Co.*, 132 Wis.
662 (113 N. W. 62, 13 L. R. A. [N. S.] 283, 122 Am. St.
Rep. 1017). See, also, *Keator v. Traction Co.*, 191 Pa. 102
(43 Atl. 86, 44 L. R. A. 546, 71 Am. St. Rep. 758) ; *Carney v.
Ry. Co.*, 8 Ohio St. & C. P. Dec. 587; *Railway Co. v. Voils,*
98 Ga. 446 (26 S. E. 483, 35 L. R. A. 655) ; *Brien v. Bennett,*
8 Carr. & P. 724.

We repeat, however, that we are not prepared to hold,
and do not contend, that the deceased had acquired the right
to the care due a passenger, but that, when he made known
to the motorman his desire to get on board, and was ap-
parently making his way to the place where he would be ex-
pected to take the car, it became the duty of defendant's
servants to operate the car with reasonable regard to such
fact and exercise all reasonable care to avoid injuring him.

Finally, even if we should assume that deceased was neg-
ligent, the case is quite clearly one for the jury upon the

question whether defendant may be properly charged with
liability under the rule of "the last fair
chance." As we have already said, the plain-
tiff's evidence tended to show that the car was
from seven hundred to eight hundred feet away when de-
fendant started toward the crossing. The motorman frankly
concedes that he saw these people where they stood when he
was a mile away. He further says he saw the deceased start
and run for the crossing, and adds, as we have already quoted,
"I knew that if the man didn't stop running he wasn't going
to get across. When I saw him running I believed he was
running into danger." The brake and controller by which
the car's speed was regulated were in good working order,
yet the jury could have properly found that no check upon
the speed was applied until just about the time the car reached
the highway or was actually on the crossing, and in fact the
motorman's own admission as to the time and distance re-
quired to make the stop indicates with reasonable certainty his
failure to act with reasonable promptness. The effect of the
humanitarian doctrine of the last fair chance cannot be
avoided by invoking the other rule that a motorman or en-
gineer may assume that a person seen on or near the track
will get out, or keep out, of the way. Within proper limita-
tions such rule is both reasonable and just, but it is not to be
so applied as to encourage recklessness by those in charge of
such dangerous agencies. There is a limit where the presump-
tion ceases and the humanitarian doctrine comes into play.
Among the many attempts to draw the line where one ends
and the other begins we may mention the following: It has
been said that the engineer cannot rest upon the assumption
that the person in question will step aside or stop in a place
of safety "so long as to allow his engine to reach a point
where it will become impossible . . . to control his train
or give warning in time to prevent injury to the traveler, sup-
posing the traveler to continue in his course." *Heddles v. R.*

<span style="margin">6. SAME: negli-
gence: last
clear chance:
evidence.</span>

*R. Co.*, 77 Wis. 228 (46 N. W. 115, 20 Am. St. Rep. 106). In *Campbell v. Ry. Co.*, 55 Kan. 536 (40 Pac. 997), Martin, C. J., places the limit at "the last moment . . . it would or ought to seem practicable to stop the train" and avoid the threatened injury. Others have defined it to be the point where peril is so imminent that to a person of ordinary prudence the infliction of injury seems probable if proper effort is not made to avoid it. Though not stated in these words, we think the substance of this rule is applied in *Barry v. Ry. Co.*, 119 Iowa, 62; *Orr v. Ry. Co.*, 94 Iowa, 423; *Purcell v. Ry. Co.*, 109 Iowa, 628; *Bruggeman v. Ry. Co.*, 147 Iowa, 204. In the last-cited case this court said: "It was enough to call for the application of that doctrine that the defendant's employees knew of plaintiff's danger in time to have avoided injury . . . in putting himself in a place of danger, and continued to be negligent in not looking out for his own safety." *Purcell v. Ry. Co.*, 117 Iowa, 667.

The admitted facts in the case now before us require no elaboration or discussion. Their mere statement is all the argument needed to bring the case within the rule. The motorman did see the deceased, recognized his peril, "knew he was not going to get across if he did not stop" and saw that he did not stop. There was evidence tending to show that this discovery was made in ample time to stop or to materially decrease the speed, and it is fairly shown that no check was applied until practically the very instant of collision. As one witness puts it, two steps more would have put the deceased out of danger, and the slightest reduction in the speed of the car's approach would have saved the man's life. In view of the conceded facts, to say nothing of other facts which the evidence tended to show, we think the court erred in directing a verdict for the defendant. The judgment below must be reversed, and cause remanded for a new trial.—*Reversed*. All the Justices concur.