JEROME BENSING, Appellant, v. WATERLOO, CEDAR FALLS & NORTHERN RAILWAY COMPANY et al., Appellees.

**NEGLIGENCE: Negligence Per Se.** Evidence held to show negligence
1   *per se* in the driver of an automobile in going upon a street car track
  ahead of an approaching car.

**NEGLIGENCE:  Last Clear Chance—Evidence.**  Evidence relative to a
2  collision reviewed, and held to present a jury question on the issue
of the last clear chance, it appearing that the jury might find that
defendant discovered plaintiff in ample time to prevent injury, but,
instead of reducing his speed, increased it.

*Appeal from Black Hawk District Court.*—GEORGE W. DUNHAM,
Judge.

NOVEMBER 16, 1920.

REHEARING DENIED FEBRUARY 17, 1921.

ACTION for damages to plaintiff's automobile and to him-
self, caused by a collision with one of defendant's cars.  There
was a directed verdict for defendant, and plaintiff appeals.—
*Reversed.*

*Mears & Lovejoy,* for appellant.

*Pickett, Swisher & Farwell,* for appellees.

STEVENS, J.—I.  Between 7:30 and 8:00 A. M., December
28, 1918, plaintiff's four-cylinder Chevrolet automobile was
demolished by a collision with one of defendant's street cars at
the intersection of Logan Avenue and Parker
Street in the city of Waterloo, and himself pain-
fully injured.  A light snow had fallen the pre-
vious night, and the thermometer registered 8 or 10 below zero.
Plaintiff resided on Logan Avenue, about four blocks north of
Parker Street, and, at the time of the accident, was proceeding
south on the west side thereof.  The automobile was equipped
with a winter top, with glass in front and isinglass on the sides
—all closed up tight.  Both streets were paved.  The street car
with which plaintiff collided was going west on Parker Street.
The collision occurred at about the center of the intersection.
Logan Avenue is 66 feet in width, and Parker Street, 58.  The
distance between the curbs on Logan Avenue is 30 feet, and on
Parker Street, 34 feet.  Plaintiff's view to the east, as he ap-

1. NEGLIGENCE:
negligence
*per se.*

proached the intersection, was obstructed by a residence located 35.4 feet east of the curb on Logan Avenue, and 24.6 feet north of the curb on Parker Street. The house fronted on Logan Avenue 24.5 feet. There was another residence 26.5 feet north, which stood practically the same distance east from the curb. About midway between the two residences, on the parking near the sidewalk, there was a tree, 15 inches in diameter. A few feet south of the south side of the house nearest to Parker Street was another small tree, near the center of the parking and Logan Avenue, and also a tree just inside the lot line, about 35 feet east of the curb on Logan Avenue, and 14 feet north of the curb on Parker Street. There was a telephone and electric light pole in the parking on the east side near the corner. Plaintiff's view to the west was also obscured by a residence 28.8 feet west of the curb on Logan Avenue and 29 feet north of the curb on Parker Street. There were 3 trees, about 12 inches in diameter and about 15 feet apart, on the parking. These trees were about 6 feet north of the curb, the first one being 26 feet west of the main curb line on Logan Avenue, which formed a curve at the corner. The plaintiff testified that he looked east between the houses on the east side of Logan Avenue, and saw no car approaching; that he did not look again in that direction until the front wheels of his automobile were within 5 or 6 feet of the north rail of the street car track, when he looked up and saw the street car approaching within 15 feet of him, at about 35 miles per hour; that he then put on the gas, thinking that his only chance to avoid a collision was by getting quickly across the track; but that, as his car had just been taken from a cold garage, its speed was not materially increased. He further testified that his car was moving about 12 or 15 miles per hour; that, as he approached the track, he was looking to the west, to see if a car was approaching from that direction.

There is the usual discrepancy in the testimony as to the relative speed of the automobile and street car. A school boy, who was delivering papers to residences in the vicinity, who was called as a witness by plaintiff, testified that, just before the collision, he was about 40 or 50 feet south of Parker Street, on the west side of Logan Avenue; that he saw the street car emerge from behind the houses on the opposite side of the avenue; that

he observed its speed, and that it was moving at least 20, and he thought 25 or 30 miles per hour; that he saw the collision, and that the street car stopped near the alley to the west, which, the evidence shows, was 129 feet from Logan Avenue. He further testified that he heard no gong or warning sounded by the motorman, and that his attention was attracted by the noise of the car.

The motorman testified that the speed of the street car at the time he reached the intersection did not exceed 15 miles per hour, and that, at the time of the collision, it was about 13 miles per hour; that he was keeping a close lookout ahead, and first saw plaintiff when he was 85 or 90 feet north of the track; that the speed of the automobile was about 10 miles per hour faster than the street car; that, at this time, the street car was 45 or 50 feet from the point of the collision; that he immediately applied the brakes and slowed the car down; but that, because snow had gotten on the brakeshoes, it did not grip the wheels tightly, and he was unable to further reduce the speed of the car. He observed that plaintiff increased the speed of his car, as he approached closer to the track. He testified that the street car stopped about two and one-half car lengths from the point of collision; that the glass in the car was broken by the contact with the auto; and that, as he stepped back to prevent injury to himself, the brake was released, causing the car to run further than it would otherwise have done. Three lady passengers on the street car testified that its speed was decreased, about the east line of Logan Avenue, but that it was increased to some extent before the collision. One witness testified that the car came practically to a standstill, but later changed her testimony, and said that the speed was reduced to 8 or 10 miles per hour. The other two testified that they saw the automobile rapidly approaching the crossing, and observed the motorman putting on the brakes. One of these witnesses said that the speed of the car was about 12 to 15 miles.

At the close of all the testimony, the court sustained a motion by defendants for a directed verdict, evidently upon the ground that plaintiff was guilty of contributory negligence. It is not claimed by counsel for appellee in argument that the issue of defendant's negligence should have been taken from the jury.

Upon the question of plaintiff's contributory negligence, the evidence is quite conclusive. He does not claim to have looked to the east to ascertain whether a car was approaching from that direction, after his view was obstructed by the residence on the east side of Logan Avenue nearest Parker Street. The physical facts presented by the record cannot be avoided. According to plaintiff's testimony, which was based upon observations made by him during the trial, as he approached the intersection on Logan Avenue from the north, at a point 86 feet south of the center thereof, looking between the houses, he could see the track at a point 390 feet east of the center of the intersection. According to the testimony of defendant's engineer, at a point 93 feet north of the center of the intersection a street car on Parker Street could have been seen from a point 360 feet east, and until it passed a point 270 feet east of the center of the intersection. The next point, as he proceeded south, at which he could have seen the track to the east, was 60 feet from the center of the intersection. At this point, had he looked, he would have had an unobstructed view of the track for a distance of 190 feet.

As stated, the maximum speed of the street car, as fixed by the plaintiff, was 35 miles per hour, and the minimum speed of his automobile 12 miles per hour. Assuming that these estimates are substantially correct, the speed of the street car was approximately three times that of the automobile, and consequently the greatest distance the street car would have traveled, after plaintiff's view was cut off by the houses 86 feet north of the crossing, until the house was passed which would have enabled him to look east at a point 60 feet north of the crossing, would have been 78 feet. Assuming, again, that the relative speed of the automobile and car was as stated by plaintiff, the street car, when the automobile was 86 feet north of the intersection, must have been approximately 248 feet east thereof. At this point, plaintiff's view was completely obscured by the residence, when he made the only observation to the east until just before the collision. The testimony does not show exactly where the street car was at this time. If its speed was less than 35 miles per hour, and the speed of plaintiff's automobile 15 miles per hour, it was much nearer the intersection than 248 feet. As stated, had plaintiff looked, when 60 feet south of the intersection, he could

have seen the car approaching for a distance of 190 feet east of
the intersection; and, as he approached the track, his view wid-
ened, and he could have seen it much further.  His view to the
west was obstructed by the residence referred to; but, according
to the physical facts, he had abundant time to look to the west
and to the east.  His attention was not distracted, and he did not
see the car until the wheels of his automobile were within 5 or
6 feet of the track.  He further testified that the motorman gave
no warning of the approach of the street car.  The testimony
is in conflict upon this point.  The duty of one approaching the
crossing of a street railway has been too often stated by this
court to require repetition, but see *Lundien v. Fort Dodge, D. M.
& S. R. Co.*, 166 Iowa 85; *Landis v. Interurban R. Co.*, 166 Iowa
20; *Westcott v. Waterloo, C. F. & N. R. Co.*, 173 Iowa 355.
Clearly, plaintiff failed to exercise the degree of care required
of the driver of an automobile about to cross the tracks of a
street car upon any theory of the relative rights and duties of the
respective parties to the use of the streets.

II.  As appears from the uncontradicted evidence and the
physical facts above stated, the motorman, had he been looking
in that direction, would have seen, and according to his testi-
mony did apparently see the plaintiff in plenty
of time to have stopped the car before reaching
the point of collision.  He testified that, when
he first saw him, plaintiff was about 80 or 85 feet north of the
intersection, and that, at this time, the street car was 40 or 45
feet east thereof.  He further testified that, after he observed
the plaintiff, he reduced the speed of his car to about 13 miles per
hour.  Two of the lady passengers on the street car testified that
they observed the automobile approaching, and they agree in
their testimony that it was farther from the point of collision
than the street car.  Both said the former was going faster,
and one of them that the distance traveled thereby was at least
twice that of the street car.  The testimony of all of these wit-
nesses was to the effect that, after the motorman put on the
brakes at or near the east line of Logan Avenue, and the speed
was reduced, it was again noticeably increased before the colli-
sion.  The ordinances of the city of Waterloo require that the
operators of street cars shall, upon approaching a crossing, sound

2.  NEGLIGENCE:
last clear
chance:
evidence.

a gong. An order of the defendant required the motorman to reduce the speed of the car to 10 miles per hour, upon approaching the crossing in question. The motorman observed the speed of the automobile, and testified that it was at least 10 miles per hour in excess of that of the street car. He testified that he applied the brake as quickly and firmly as he could, but that, on account of the presence of snow on the brakeshoes, they did not grip the wheels tightly, and he was unable to stop the car; but he testified that its speed continued to decrease until the collision occurred.

The jury, however, would have been warranted, from the testimony of the other witnesses, in finding that the speed of the car was increased after the brakes were first applied. The motorman had no signal to stop the car, and did not intend to stop it. It is conceded that the automobile was thrown onto the sidewalk near the corner northwest of the intersection, and that plaintiff was thrown 10 or 15 feet further. This fact throws some light upon the speed of the car. As already indicated, the evidence is in conflict as to the distance from the point of the collision at which the street car came to a standstill. One witness, not previously referred to, testified that he measured it, and that it was 125 feet. The explanation of the motorman that he stepped back at the time of the collision to avoid being injured by the glass of the car, which was broken by the contact with the automobile, and by so doing released the brake, causing the car to continue, is plausible.

The plaintiff was at all times within view of the motorman, after he first saw him 85 or 90 feet north of the crossing, and saw him reach a place of danger. It was the duty of the motorman to use all the means and instrumentalities at hand, after he did discover, or should have discovered, the peril of plaintiff, to stop the car and prevent the accident. There was sufficient evidence to carry the issue of last clear chance to the jury, and the court erred in directing a verdict for defendant thereon. A restatement of the law is unnecessary. It has often been considered in cases of similar character. See *Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa 187; *Davidson Bros. Co. v. Des Moines City R. Co.*, 170 Iowa 467; *Joyner v. Interurban R. Co.*, 172 Iowa 727; *Bridenstine v. Iowa City Elec. R. Co.*, 181 Iowa 1124.

III.   Some claim is made by counsel for appellee that the motion to direct a verdict in favor of the defendant, the Waterloo, Cedar Falls & Northern Railway Company, should have been sustained, upon the ground alleged as a separate defense in its answer, that the street railway was, at the time of the accident, under the president's proclamation of September 27, 1917, and the act of Congress of March 21, 1918, being operated by, and under the control of, the director general of railroads.   General Order 50 and General Order 50-a of the director general of railroads were offered in evidence, but excluded by the court.   These orders provided, as we understand the record, that the liability of railroads under the control and operation of the government was that of the director general, and not of the corporation.   The questions presented by this issue are not argued by counsel for appellant.   Apparently, the ruling of the court below upon defendant's motion to direct a verdict was not based upon this proposition, and no ruling appears to have been entered thereon. We shall not, therefore, attempt a discussion thereof, or an adjudication of this question.   For the reasons pointed out, the judgment of the court below is—*Reversed.*

WEAVER, C. J., LADD and ARTHUR, JJ., concur.