### GRAVEN v. MacLEOD et al.

(Circuit Court of Appeals, Sixth Circuit. March 27, 1899.)

No. 609.

1. CARRIERS—INJURY TO PASSENGER—CONTRIBUTORY NEGLIGENCE—FAILURE TO LOOK AND LISTEN.

Where a carrier so operates its trains at a station that a passenger is impliedly invited to cross an intervening track in going to or leaving his train, he is chargeable only with the exercise of reasonable care to avoid danger, and is not necessarily guilty of contributory negligence in failing to look and listen for an approaching train before crossing such track.

2. SAME — IMPLIED INVITATION TO CROSS TRACKS — EVIDENCE — QUESTION FOR JURY.

Deceased left a train, at a station, on the side opposite to the platform provided,—it being nearer to his residence,—and attempted to cross an intervening track, eight feet distant from the train, when he was struck and killed by another train, running in the opposite direction. Rain was falling at the time, which obscured vision; and deceased, as he left the car, pulled his hat over his face to shield it. The company's rules required trains to approach that station under full control, and prohibited trains from passing that station while other trains were receiving or discharging passengers. These rules were habitually disregarded, and the train which struck deceased was running at 15 miles per hour at the time. When the road was first built, cars were equipped with gates to prevent passengers from leaving, except on the platform side of the cars; but these had been taken off some time before the accident, and there was no notice or other warning forbidding passengers from alighting away from the platform. Deceased uniformly, and other passengers generally, without objection of the company, got off on either side, at their con-

venience. *Held*, that the company had impliedly invited passengers to alight on either side, and that the question of deceased's contributory negligence was for the jury.

## In Error to the Circuit Court of the United States for the District of Kentucky.

This is an action for the negligent killing of Alpha Graven, the husband and intestate of Minnie Graven, the plaintiff in error. The deceased was a passenger upon the line of electric railway operated by defendants as receivers, extending from Louisville, Ky., west to the neighboring city of New Albany, on the Indiana side of the Ohio river. This line of railway consists of two parallel tracks, one of which is used exclusively by trains east bound, and the other by trains running in the opposite direction. The deceased lived in the western part of the city of Louisville, and was accustomed to travel between the city and his residence upon defendant's railway; taking and leaving the cars at its Twenty-Sixth street station, near which he lived. That station consisted of two platforms, one on each side of the right of way. Each was 118 feet in length, and each began at a point east of Twenty-Sixth street, and extended to the eastern line of that street. The platform on the south side of the railway was intended for the convenience of passengers taking or leaving trains east bound, while the opposite platform was along the side of the track used by west-bound trains, and was intended for the use of passengers taking or leaving trains bound west. On the latter was a small box house, used for the sale of railway tickets during certain hours of the day. The space between the two platforms was occupied by two parallel tracks, the space between the tracks being about eight feet. The evidence tended to show that the space between the rails was filled in smoothly with cinders, but the evidence was conflicting as to the condition of the space between the two tracks. On the afternoon of May 10, 1894, Graven took a train at Seventh street, Louisville, purposing to return to his residence. This train was due to arrive at Twenty-Sixth street at 5:58 p. m. The sun was not down, but a storm of wind and rain darkened the afternoon. This train, like all others operated on the road, consisted of a motor car and a trailer. Graven took his place in the motor car. As the train was slowing up for Twenty-Sixth street, he came out of his car, and stood under its rear hood, and, before it had come to a stop, jumped off, away from the platform, and undertook to cross the east-bound track diagonally, in the direction of Twenty-Sixth street, on which he lived. Just as he was about to step on that track, he was struck and knocked down by the corner of a passing east-bound train, and sustained injuries resulting in death.

In respect to the negligence of the railway company, there was evidence tending to show: (1) That there was a rule of the company which provided that "all trains and engines on either track must approach Twelfth, Eighteenth, Twenty-Sixth and Twenty-Ninth streets under full control, and keep a careful lookout for passengers crossing to and from Kentucky and Indiana trains, and must not under any circumstances pass these stations while Kentucky and Indiana trains are receiving and discharging passengers." (2) There was evidence tending to show that the train from which Graven debarked was several minutes behind time, and that the schedule passing point for that train to pass the east-bound train was between Twenty-Ninth and Thirty-First streets; but, being behind time, the east-bound train was due to pass at any moment. There was also evidence that under the schedules a train bound east passed Twenty-Sixth street every 15 minutes. (3) There was evidence tending to show that the train which collided with deceased did not approach this station under "full control," but was approaching at a speed estimated as high as 15 miles per hour, and that no effort was made to check or stop until Graven's danger was observed. There was conflicting evidence as to whether any warning was given of its approach to this station. (4) There was evidence tending to show that the rule requiring trains not to pass the stations named while other trains were receiving or discharging passengers was habitually disregarded; the customary practice being to pass without stopping, unless there were passengers to put off or take on. (5) There was evidence tending to show that Graven was observed as soon as he stepped off the standing train,

and every effort made to stop the train which was possible, but without avail. (6) There was evidence that when electric trains were first put on this railway the cars were provided with gates, which the trainmen were required to keep so closed that passengers could not take or leave the cars except by way of the platforms provided for that purpose. But the evidence also showed that these gates had been removed some time before this accident. (7) The evidence tended to show that no warning or other notice had ever been posted in the cars, or about the stations, forbidding passengers from alighting away from the platforms, or requiring them to use the platforms in getting on or off of trains. (8) There was conflicting evidence as to whether the employés had instructions to warn or forbid passengers from alighting away from the platforms, and evidence tending to show that, if employés had any duty in this respect, imposed by any rule of the company or of the receivers, the rule was generally disregarded, and passengers suffered, without objection, to leave the cars on or away from the platform, as suited their convenience. (9) Graven lived south of the station. His train came in on the northern track. There was evidence tending to show that he customarily left the train on the south side (that is, the side away from the platform provided for the use of west-bound trains), and crossed the east-bound track between the platforms to Twenty-Sixth street, and evidence tending to show that passengers living south of the railway customarily left the train away from the platform, and crossed the east-bound track diagonally to Twenty-Sixth street, as Graven undertook to do on this occasion.

Respecting the defense of contributory negligence, there was evidence as follows: (1) That, before stepping off the car, Graven pulled his coat collar up around his neck, and pulled a soft-brimmed hat down over his face, for the purpose of shielding his eyes and face from the wind and rain which was coming from the west; that being the direction in which his route took him. There was evidence tending to show that as he stepped out into the storm he bent or bowed his head, as if to shield his face. The evidence also tended to show that while standing under the hood of the car his back was to the west, but as he stepped down onto the track he was facing west, the direction from which the colliding train came. (2) The evidence conclusively established that the space between the train from which he debarked and the east-bound track was ample to protect him from collision, and that the distance from the spot on which he landed, when he stepped from his car, to Twenty-Sixth street, on which he lived, was from 30 to 50 feet, and that he could have safely walked between the tracks to Twenty-Sixth street, and then crossed the east-bound track at a public street crossing. By crossing diagonally to Twenty-Sixth street he saved about one-third of the distance. (3) The undisputed evidence established that, when Graven started diagonally, in a southwest direction, towards Twenty-Sixth street, the east-bound train was approaching from the west, and nearly in front of him, and was not more than from 20 to 40 feet away. He had taken not more than three or four steps before he was struck by the front corner of the motor car. (4) The evidence was that this accident occurred at 6 p. m., May 10, 1894, that the sun was not down, but that the storm of wind and rain rendered it difficult to see with distinctness any distance, especially in the direction from which the wind was coming. There was also some evidence tending to show that the deceased was slightly near-sighted.

At the close of all the evidence the learned trial judge instructed the jury to find for the defendants, upon the ground that, as matter of law, the deceased had been guilty of contributory negligence.

D. Moxley, for plaintiff in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

Upon a former trial of this case there was a judgment for the plaintiff in error, which, upon a writ of error, was reversed by this

court for error in refusing to instruct the jury that, upon the undisputed facts, the deceased had, as matter of law, been guilty of contributory negligence. The facts upon which our judgment was based, and our reasons for the conclusion then reached, will fully appear by an examination of our opinion as reported in the case of MacLeod v. Graven, 73 Fed. 627; Id., 47 U. S. App. 573, 24 C. C. A. 449, 79 Fed. 84. While the general facts in this and the former record are much the same, the case for the plaintiff in error has been somewhat strengthened in respect to the negligence of the railway company in the matter of both the existence and enforcement of any rule forbidding passengers to leave the cars away from the platforms provided for that purpose. Upon the former record we held that the undisputed evidence justified no other inference than that Graven, after alighting from the train, had, without either stopping or listening or looking, undertaken to cross a railway track upon which a train was rapidly approaching, which he could not but have seen, if he had looked or listened before going upon the track. We reached this conclusion irrespective of the question as to whether he had violated any rule of the company, in alighting away from the platform, and based our judgment upon his failure to observe that high degree of care required of one about to cross a railway track, as announced and applied in the cases of Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125; Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85; and Blount's Adm'x v. Railway Co., 22 U. S. App. 129, 9 C. C. A. 526, 61 Fed. 375. We did not regard the case of Railway Co. v. Lowell, 151 U. S. 209, 14 Sup. Ct. 281, as in any way conflicting with the ground upon which we rested our judgment, because in that case the alleged contributory negligence of Lowell consisted in his conduct in leaving the train away from the station platform, in supposed violation of a rule of the company known to him, and conspicuously posted in the cars. The question as to whether Lowell had been guilty of negligence in his manner of crossing the track cut no figure in the result; for Mr. Justice Brown, in announcing the opinion of the court, said:

"In his manner of leaving the train there seems to have been no negligence. He took hold of the iron railing at the end of the platform on the right-hand side, stepped down with the left foot first, and faced towards the west, on the south-line track, saw or heard no train coming upon that track, and supposed that he was perfectly safe in crossing, as he knew no train was then due."

But since that opinion, and since the former reversal of this case, the supreme court, in the case of Warner v. Railroad Co., 168 U. S. 339, 18 Sup. Ct. 68, has drawn a distinction between the duty owing to a passenger by a railway company and that due to a traveler crossing its tracks. Upon that subject the court said:

"The duty owing by a railroad company to a passenger actually or constructively in its care is of such a character that the rules of law regulating the conduct of a traveler upon the highway, when about to cross, and the trespasser who ventures upon the tracks of a railroad company, are not a proper criterion by which to determine whether or not a passenger who sustains injury in going upon the tracks of the railroad was guilty of contributory negligence. A railroad company owes to one standing towards it in the relation of a passenger a different and higher degree of care from that which

is due to mere trespassers or strangers, and it is, conversely, equally true that the passenger, under given conditions, has a right to rely upon the exercise by the road of care; and the question of whether or not he is negligent, under all circumstances, must be determined on due consideration of the obligations of both the company and the passenger. As said by the court of appeals of New York in Terry v. Jewett, 78 N. Y. 338–344: 'There is a difference between the care and caution demanded in crossing a railroad track on a highway, and in crossing while at a depot of a railroad company to reach the cars. No absolute rule can be laid down to govern the passenger in the latter case under all circumstances. While a passenger has a right to pass from the depot to the train on which such passenger intends to travel, and the company should furnish reasonable and adequate protection against accident in the enjoyment of this privilege, the passenger is bound to exercise proper care, prudence, and caution in avoiding danger. The degree of care and caution must be governed in all cases by the extent of the peril to be encountered, and the circumstances attending the exposure.' "

A peremptory instruction to find for the defendant was given upon proof that the plaintiff, who was a passenger, and who was, under the necessity of crossing a track in order to reach a train standing upon another, had crossed an intervening track, on which a train was approaching, which he could not have failed to see, if he had stopped and looked before going on the track. The supreme court held that there was a view of the testimony which constituted "an implied invitation to the passenger to follow the only course which he could have followed in order to take the train; that is, to cross the track to the waiting train." Where the circumstances are such as to constitute an implied invitation to depart from a station by crossing a track, the passenger, while not absolutely free from the duty of exercising care and caution in avoiding danger, would be justified in assuming that, in holding out the invitation to leave its train by crossing an intervening track, the railroad company had not "so arranged its business as to expose him to the hazard of life and limb unless he exercised the very highest degree of care and caution." Warner v. Railroad Co., 168 U. S. 339–347, 18 Sup. Ct. 68. While it is true that the case before us does not show, as in the Warner Case, that there was no other course left the deceased than to make his exit from this train away from the platform, and across the east-bound track, yet there was evidence tending to show that the way taken by him was not forbidden, and was the one customarily used by passengers living, as he did, on the side away from the platform. The circuit court was obliged to take that view of the evidence most favorable to the deceased, where the question was whether there was any evidence for the jury. There was, therefore, a view of the evidence which might, in the absence of other circumstances, have justified the deceased in assuming that an implied invitation was extended to him to leave the station in the way he did, if that was most convenient to him, and in relying upon the obligation thereby imposed upon the company of so operating its trains as that he should not be exposed to danger "unless he exercised the very highest degree of care and caution." This view of the law, as announced in the case of Warner v. Railroad Co., supra, requires that the question of contributory negligence should be submitted to the jury, upon all the facts and circumstances of the case. If the deceased was not justified in assuming that the com-

pany extended to him an implied invitation to leave its trains as he did, and to cross its track between the platforms on his way from the station, he would not be justified in relying upon the company so operating its trains at this station as that he might cross this track at the time and place he did without the exercise of the highest degree of care and caution. On the other hand, if the circumstances were such as to justify the deceased in assuming that the company extended to him an implied invitation to leave its train away from its platform, and to make his way from the station upon or across its east-bound track, the company would come under an obligation to so regulate the running of its trains while passengers were being discharged from trains bound west, and standing at that station, as that those accepting such invitation would not be in danger of life or limb unless they exercised the highest degree of care and caution. If, from the facts and circumstances known to the deceased, or which, as a passenger accustomed to the use of the trains of this company, he is presumed to have known, he was justified in assuming that he might rely upon the exercise by the company of that degree of care due to a passenger crossing a track upon the implied invitation of the company, he would be chargeable only with reasonable care in avoiding danger. In such case, the mere fact that a passenger crosses a track to take his train, or in leaving his train, without looking or listening, would not necessarily be contributory negligence, but would be a question for the jury to determine whether, under all the facts, such conduct was due care. The right to rely upon the care and caution of the company furnishes some reason for the failure to exercise that high degree of care which one is bound to exercise when his safety depends wholly upon his own watchfulness. Wheelock v. Railroad Co., 105 Mass. 203; Terry v. Jewett, 78 N. Y. 338; Brassell v. Railroad Co., 84 N. Y. 246.

In view of the law as announced and applied in the case of Warner v. Railroad Co., 168 U. S. 339, 18 Sup. Ct. 68, and of the obligation of this court to conform its decisions to the opinion of that court, our former opinion in this case must be regarded as overruled. Reverse and remand for a new trial.