KARR, Respondent, vs. MILWAUKEE LIGHT, HEAT AND
TRACTION COMPANY, Appellant.

*September 7—September 24, 1907.*

*Appeal: Court and jury: Carriers: Electric railways: When person
becomes a passenger: Invitation to cross tracks: Personal in-
jury: Negligence: Contributory negligence.*

1. Refusal of the trial court to direct a verdict for defendant will
   not be held error if there was any credible evidence which,
   taken in its most favorable aspect to plaintiff, might directly or
   by proper inference sustain the judgment for plaintiff.

2. One who in good faith, intending to take passage, has signaled an approaching interurban car in the regular and recognized manner, to which signal the motorman has responded in the usual way by whistling or by setting his brake, is a passenger.

3. An interurban railway maintained between its parallel tracks a device to enable prospective passengers to signal approaching cars at night, directing them, by a sign, to turn on the signal light by holding up a handle until the car came in sight. It was necessary to cross one track in order to operate the signal, and to recross it to enter the car. *Held*, that prospective passengers were impliedly invited so to cross and recross the track.

4. After giving such signal, a passenger thus impliedly invited to recross the track in order to enter the signaled car was chargeable only with the exercise of reasonable care in so doing and was not necessarily guilty of negligence in failing to look and listen before crossing.

5. Whether in this case the defendant electric railway company was guilty of negligence in maintaining such a signal device and in the operation of its cars in connection therewith, and whether plaintiff was guilty of contributory negligence in attempting to recross the track in front of the car which he had signaled, are *held*, upon the evidence, to have been questions for the jury.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

The appeal is from a judgment rendered upon a verdict for $2,080 in an action for negligent injury to the plaintiff.

*Clarke M. Rosecrantz,* for the appellant.

*John Toohey,* for the respondent.

TIMLIN, J. The plaintiff has a verdict and judgment, and the only errors assigned are the refusal of the court below to direct a verdict for defendant and refusal to grant judgment for defendant. In such case it is necessary only to examine the evidence for the purpose of ascertaining if there is any credible evidence which, taken in its most favorable aspect to the plaintiff, might directly or by proper inference sustain the judgment below. If there is such evidence, countervail-

ing evidence on the part of the defendant cannot be considered.

The defendant, an interurban common carrier operating its electric cars by the center pole overhead system, has at Brookdale station, where the injury in question occurred, two parallel tracks, seven feet nine inches apart between the inner rails, extending nearly north and south, but somewhat curving at this point. The east track is used by the north-bound cars and the west track by the south-bound cars. These cars can only be boarded by passengers from the outside rail of each track, and in daytime the passengers stand outside the outside rail and give a signal with the hand for the car to stop. The car makes only a short stop, just long enough to allow the passengers to embark in the same manner in this regard as street railways in cities are operated. Brookdale station is a place where the defendant is accustomed to receive and discharge passengers, but there is no building or platform, the roadbed is widened for a short distance, and the usual stopping place for receiving and discharging its passengers is about twenty-five feet north of a trolley pole standing midway between the tracks, having on it a board sign with the word "Brookdale," and having on it a device for holding up a rod or lever closing an electric circuit, and thereby causing an electric light to appear ten or twelve feet up on the pole, and so enable prospective passengers to signal approaching cars at night. On this night-signal device there are printed instructions for such passengers in these words: "Hold up handle until car is in sight." This same signal is employed for north-bound and south-bound cars, but the south-bound car stops within twenty-five feet and before reaching the signal light, while the north-bound car runs twenty-five feet past the signal light to reach the stopping place. The lever or rod for operating the signal light was on the east side of the trolley pole, the overhang of the passing car was one foot ten inches, the diameter of the trolley pole

upwards of a foot, and the person standing on the east side of the pole operating the signal light would be within eighteen inches of the passing car on that side. Taking the position of the signal light in the center between the tracks, the printed directions thereon, and the necessity of boarding the car on the side of the car opposite to the signal light, there was an invitation to night passengers to cross the track to the signal light in order to give the signal, and to cross the track again after giving the signal in order to board the car, with no other visible designation of the point where the car would stop with reference to the signal light, and without any directions whether to cross the track the last time before the car arrived at the signal light or afterward. The situation was full of danger, particularly on a dark night, and this danger could only be avoided by the passenger knowing or remembering that the signaled north-bound car ran by the signal light before stopping and by remaining between the tracks until after it passed him and stopped, and then crossing the track behind the car, and by knowing or remembering that this applied to the north-bound car, while the south-bound car was the one which stopped before it reached the signal light, and by knowing or remembering the distance between the tracks and the overhang of the cars, and that he could, with the exercise of care in choosing his position between the tracks in the night, avoid being struck by a car if he remained between the tracks.

One who had by daylight observation become familiar with these conditions and these measurements and the place of stopping the north-bound car might, and probably would, remain between the tracks after he had held up the signal light and until the car arrived, but a person not possessing this familiarity, and arriving on a dark night where distances cannot be so accurately estimated, might ordinarily and usually, in view of the position of the signal light on the center pole, the printed and inadequate instructions

thereon, and the necessity of boarding the car from the out-side, cross over to that side immediately upon letting go of the signal light. This was for the jury to decide, and upon their determination of this question and upon the legal rela-tion of the plaintiff to the defendant depended in large part the charge of contributory negligence against the plaintiff.

The night in question was dark and foggy. The plaintiff, intending to board the north-bound car of defendant at Brookdale and coming from the east, crossed the east track to the signal light and listened for an approaching car. When he heard the car approaching he pressed on the rod and displayed the signal light, standing on the east side of the pole bearing that light and within about three feet of the inner rail of the east track. As soon as he saw the headlight of the approaching car he let go the signal light, which imme-diately extinguished, and started eastward briskly, crossed the east track, and was struck at or about the east rail of the east track, having made not more than two or three steps after letting go of the signal rod. We are not informed at what point or at what distance south of the signal light he first saw the headlight, but the motorman saw the signal light when he was about 105 or 110 feet south of the signal light, and whistled to the prospective passenger his acceptance of the signal, as was usual, and immediately began to apply his brake. He saw the signal light disappear, no doubt, at the time the plaintiff released his hand from the signal rod and started to cross the track, when he (the motorman) was at the next pole south of the pole bearing the signal, or ninety-two feet and some inches south of the signal light; but after striking the plaintiff he ran quite a distance past the usual place of stopping, and afterward backed up about 100 feet to where the plaintiff lay, some distance northeast of the signal light. The car approached the station in question at a very high rate of speed, some of the witnesses for the plaint-iff claiming at the rate of forty miles an hour, and the dis-

tance which the car ran by the signal light and by its usual stopping place indicates an excessive and negligent rate of speed in approaching such a station on a dark night circumstanced as this station was. This case is not ruled by *Hogan v. Winnebago T. Co.* 121 Wis. 123, 98 N. W. 928; *Schroeder v. Wis. Cent. R. Co.* 117 Wis. 33, 93 N. W. 837; *Bohn v. Racine,* 119 Wis. 341, 96 N. W. 813; *Watermolen v. Fox River E. R. & P. Co.* 110 Wis. 153, 85 N. W. 663, or that class of cases with reference to the alleged contributory negligence of the plaintiff. When the plaintiff in good faith signaled the approaching car in the regular and recognized manner, and the motorman responded to that signal by whistle or the act of setting his brake, the plaintiff became a passenger.

"One becomes a passenger when he puts himself into the care of the railroad company to be transported under a contract and is received and accepted as a passenger by the company. There is hardly ever any formal act of delivery of one's person into the care of the carrier, or of acceptance by the carrier of one who presents himself for transportation, and so the existence of the relation of passenger and carrier is commonly to be implied from circumstances. These circumstances must be such as to warrant an implication that the one has offered himself to be carried on a trip about to be made, and that the other has accepted his offer." *Webster v. Fitchburg R. Co.* 161 Mass. 298, 37 N. E. 165, 24 L. R. A. 521, and cases in note.

One in good faith going through the depot to take passage on the cars is a passenger, although he has not bought a ticket. *Grimes v. Pa. Co.* 36 Fed. 72; *Allender v. C., R. I. & P. R. Co.* 37 Iowa, 264. One who enters upon depot grounds by the approaches furnished by the carrier is a passenger. The fare does not have to be paid nor the train entered, but the person must merely enter within the control of the carrier at the depot through the usual channels of business with the intention in good faith of becoming a passenger by either paying fare before or after entering the train. *Baltimore & O.*

*R. Co. v. State,* 81 Md. 371, 32 Atl. 201; *Smith v. St. Paul City R. Co.* 32 Minn. 1, 18 N. W. 827; *North Chicago St. R. Co. v. Williams,* 140 Ill. 275, 29 N. E. 672. The rule relative to contributory negligence on the part of the passenger in such case is well stated by the circuit court of appeals of the sixth circuit in *Graven v. MacLeod,* 92 Fed. 846, 35 C. C. A. 47, following *Warner v. B. & O. R. Co.* 168 U. S. 339, 18 Sup. Ct. 68, as follows:

"Where a carrier so operates its trains at a station that a passenger is impliedly invited to cross an intervening track in going to or leaving his train, he is chargeable only with the exercise of reasonable care to avoid danger, and is not necessarily guilty of contributory negligence in failing to look and listen for an approaching train before crossing such track." See Rose's Notes to 168 U. S. 339, 18 Sup. Ct. 68.

The reason for the distinction between the case of a passenger crossing a track under such circumstances and the case of an ordinary pedestrian bearing no such relation to the railroad company appears to rest upon the possibility or probability that a reasonably prudent man in the exercise of ordinary care might well believe that, in the face of such implied invitation to cross, the movements of passing trains would be so regulated or adjusted as to permit his crossing in safety. In the instant case the jury was authorized to infer from the evidence that the plaintiff, as a reasonably prudent man, understood that he was obliged to cross the east track in order to board the car in question and to cross at the time and in the manner in which he did cross, and that due care would be exercised by the defendant for the safety of those so crossing by stopping the car south of or at the signal light. The jury had also the right to consider that the plaintiff was so near the inner rail and in such a position in giving the signal that an ordinarily prudent man, knowing that the car would stop only for a moment to permit him to embark, might have considered it the proper course to cross the track at the time, and in the manner in which, he did cross it in order to enter the car. It was essentially a question of fact, not one of law,

whether or not an ordinarily prudent man would, under the circumstances, have done as the plaintiff did, and whether or not the plaintiff was conscious that the car was approaching in the sense of continuing its movement across and beyond the point at which the plaintiff attempted to cross the track. There was therefore evidence to sustain the finding of the jury negativing contributory negligence, and there was also evidence to sustain the finding of the jury that the defendant was guilty of negligence in maintaining this signal for the use of passengers at the place and under the circumstances in question, and also in the operation of its car on the night in question in approaching such a place.

It follows that the judgment of the circuit court should be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed.

CASSODAY, C. J., dissents.