Meierhoff v. United Railways Co.

THEKLA MEIERHOFF, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, January 5, 1915.

1. **STREET RAILWAYS: Injury to Intended Passenger at Station: Degree of Care.** One who was struck and killed by an interurban car while crossing the track from a station on one side thereof to a platform on the other side, for the purpose of boarding the car, even if not a passenger, was an invitee whose presence the operators of the car were bound to anticipate and for whose safety they were required to exercise special care, and it was negligence for them to run the car past the station at a high rate of speed, without taking any precautions for the safety of such person.

2. ———: ———: **Contributory Negligence.** One who was struck and killed by an interurban car while crossing the track from a station on one side thereof to a platform on the other side, for the purpose of boarding the car, was not required to exercise the same care for his own safety as is required of a trespasser or even of a pedestrian at a highway crossing, since he had the right to assume that the operators of the car would take special precautions for his safety, and hence the question of whether he was guilty of contributory negligence was for the jury.

Appeal from St. Louis County Circuit Court.—*Hon. G. A. Wurdeman,* Judge.

AFFIRMED.

*Boyle & Priest* and *T. M. Pierce* for appellant.

(1) The court should have peremptorily instructed the jury to render a verdict in favor of the appellant: (a) No actionable negligence was proved against the appellant. Pope v. Railroad, 242 Mo. 232; Kinlen v. Railroad, 216 Mo. 145; Boyd v. Railroad, 105 Mo. 371; Moody v. Railroad, 68 Mo. 470; Roenfeldt v. Railroad, 180 Mo. 567. (b) The deceased was guilty of contributory negligence as a matter of law. Reeves v. Railroad, 251 Mo. 169; Laun v. Railroad, 216 Mo. 563; Farris v. Railroad, 167 Mo. App. 392. (2) Plaintiff's instruction number 1 is erroneous—(a) It was made the duty of the motorman in charge of the car to attempt to stop it when he saw the plaintiff's husband passing over the tracks without regard as to whether he was in apparent peril at the time. McGee v. Railroad, 153 Mo. App. 492; Roenfeldt v. Railroad, 180 Mo. 554. (b) This instruction broadened the negligence based on the humanitarian doctrine, the only negligence pleaded, so as to include negligence based on failure to see. McQuade v. Railroad, 200 Mo. 150; Politowitz v. Telephone Co., 115 Mo. App. 57; Black v. Railroad, 217 Mo. 672; Stid v. Railroad, 236 Mo. 382; Schumacher v. Brewing Co., 247 Mo. 141.

*John P. Leahy* and *Frank H. Sullivan* for respondent.

(1) The demurrer to the evidence was properly overruled because: (a) Appellant having invited deceased to make use of the facilities provided to await and reach its cars, was bound to so operate its cars as that he might do so with safety. Burbridge v. Cable Co., 36 Mo. App. 669; Karr v. Railroad, 132 Wis. 666; Warner v. Railroad, 168 U. S. 345; Chunn v. Railroad, 207 U. S. 302; Canham v. Rhode Island Co., 85 Atl. 1051; Dickemann v. Railroad, 121 N .W. 682;

Copeland v. Railroad, 67 N. Y. App. Div. 486, S. C. 78, App. Div. 420, S. C. 177, N. Y. 570; Railroad v. Hammerly, 40 Mo. App. Cas. D. C. 199. (b) Deceased had the right to assume that appellant's cars would be so operated as that he might pass from the waiting room to the platform with safety; and hence he was not guilty of contributory negligence. Authorities, supra. (c) Even if there is no more in the case than the application of the humanitarian doctrine, the testimony is ample to prove that appellant was bound to anticipate the presence of persons crossing its tracks at the point where the accident occurred, and that the operative of the car discovered deceased, or might have done so, in time to have avoided striking him. Criss v. United Railways, 166 S. W. 837; Feldman v. Railroad, 175 Mo. App. 636; Walker v. Railroad, 173 Mo. App. 84; Windle v. Railroad, 168 Mo. App. 603; Zander v. Transit Co., 206 Mo. 464; Pendenville v. Transit Co., 128 Mo. App. 602; Peterie v. Railroad, 177 Mo. App. 366; Johnson v. Traction Co., 176 Mo. App. 190; McGee v. Power Co., 153 Mo. App. 498. (2) Instruction number 1 was properly given. Authorities supra, 1 (a).

NORTONI, J.—This is a suit under the wrongful death statute for damages accrued to plaintiff through defendant's negligence. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff is the widow of Adolph Meierhoff, who came to his death through being run upon by one of defendant's trolley cars. Defendant owns and operates a railroad and line of suburban electric cars between the city of St. Louis and Creve Coeur Lake in St. Louis county. Plaintiff's husband came to his death in December, 1910, through being run upon by one of defendant's cars, about 6:15 o'clock in the morning, while darkness prevailed, at Overland Park station, on defendant's railroad. Overland Park station

is in a rural neighborhood outside of the city and is a place maintained by defendant for the reception and discharge of passengers. Plaintiff's husband met his death while in the act of crossing defendant's tracks from the station house on the south to the passenger platform on the north, with a view of boarding the car which ran upon him, and the question for consideration relates to this matter, for the reason defendant argues no recovery should be allowed, because, first, it does not appear defendant was remiss in its duty, and, second, it is said decedent should be declared guilty of negligence as a matter of law for having attempted to pass in front of an approaching car. But the argument is without avail, for that, whether a passenger or not, decedent was an invitee of defendant at the time and place he was run upon by the car and his presence there was within the range of reasonable probabilities to be anticipated by defendant in the exercise of due care. Moreover, he was justified in assuming, through the assurance of safety involved in the circumstances, that defendant would so operate its cars as to protect him, and he was thus relieved from exercising the care for his own safety that should attend the movements of either a trespasser on the track or a pedestrian on a highway in nowise invited by defendant to be present.

It appears defendant maintains double car tracks running east and west through the small suburban settlement known as Overland Park, and the north track is occupied by cars going westward, while the south track by cars moving eastward. Defendant had constructed and maintained, for the accommodation of persons desiring to take or alight from its cars at Overland Park, two separate cinder platforms. One of these platforms was on the south side of the south track, and adjacent thereto stood a small station house for the use of passengers. There is some controversy in the case as to whether or not defendant owned the station house, but it is abundantly shown that it stood

—in part at least—on defendant's right of way; that defendant's employees placed it there; and that it was constantly used by passengers with the knowledge and consent of defendant; moreover, the jury found the fact .to be that defendant maintained it for such purpose. On the side of the track opposite to the station house and the cinder platform adjacent to it, but about thirty feet to the westward, defendant had constructed another cinder platform for the use of passengers going upon and alighting from its westbound cars on the north or westbound track. The cinder platform adjacent to the station house on the south side of the south track was constructed for and used by passengers boarding and alighting from the cars going east, and, as before said, this platform was about thirty feet farther east than the one on the opposite side for westbound passengers. .Between these two cinder platforms on either side of the railroad, defendant had constructed a pathway of cinders across the two tracks for the use of passengers passing to and from the station house. This cinder pathway across the tracks commenced at the station house on the south and proceeded to the northwest at an angle of about forty-five degrees until it connected with the cinder platform provided for westbound service on the north side of the north track. The patrons of defendant railroad constantly used this cinder pathway across the tracks from the station to the platform on the opposite side for the purpose for which it was provided—that is, in crossing from the station to the platform—when desiring to board a westbound car.

Plaintiff and her husband resided at Overland Park and he was engaged at a brickyard in St. Louis county, some several miles to the westward. Rodgers, the superintendent of the brickyard, likewise resided at Overland Park and it was the custom for the two men to go to and from their work together on defendant's cars. They usually boarded the westbound car

in the morning about 6:15 o'clock for transportation to their place of employment. On the day in question, Rodgers, the superintendent, and Meierhoff, the decedent, were within defendant's station house awaiting the approach of the 6:15 car, when a car suddenly came in view, about 600 feet to the eastward, at Verona. The date was December fifth, and it was so dark that Rodgers carried a lantern. On hearing the sounding of the gong on the car as it approached Verona station, 600 feet to the eastward, Rodgers looked through the window of the station house, said to Meierhoff, "Here is our car," picked up the lantern, and walked across the tracks on the cinder pathway to the passenger landing for westbound cars on the opposite side, and plaintiff's husband, Meierhoff, followed immediately in his rear and to the left. The evidence is the two men walked "briskly" across the tracks on the cinder pathway provided by defendant, toward the platform on the opposite side, but talked the while, and Rodgers carried in his right hand the lantern which gave forth a brilliant light. Both were facing, of course, to the northwest, for defendant had so constructed the pathway from the station house to the platform, and the car which ran upon Meierhoff was approaching from the eastward. The car was brilliantly lighted and the evidence is that it collided with Meierhoff, causing his immediate death, just as he was stepping off of the north track, while running at a speed of from thirty to sixty miles per hour, grazed the coat of Rodgers, who carried the lantern, and did not stop until some two or three hundred feet beyond. It appears that defendant operated two lines of cars over the same tracks—one known as a "through" car, destined to Creve Coeur Lake, the end of the line, and the other as a "tripper," destined to a point known as Crow's Nest, some distance east of Creve Coeur Lake, at which place the "tripper" made the loop for the return trip east. The cars were alike and did not

differ from the usual pattern. The car which ran upon and caused the death of plaintiff's husband was a "tripper," destined to Crow's Nest only, while decedent and Rodgers desired to take the regular car for their work beyond that place, and it is true neither would have boarded the "tripper" had it stopped. However, the "tripper" was running on the time of the regular car, and it appeared to the parties to be the car for which they were waiting.

There is an argument put forward on these facts to the effect that "trippers" did not stop at this particular station and, therefore, no obligation obtained to look out for passengers desiring to take one there, but even if the proposition be sound, the evidence does not sustain the view in which it is advanced, for the witness says sometimes the "tripper" stopped and sometimes it did not, as, of course, is usual, for it depended upon whether there were passengers to be received or discharged at that place. The evidence is entirely clear that plaintiff's husband came to his death while an invitee at a point on defendant's tracks provided for him to pass with a view of taking an approaching car, and this, too, at a station where defendant was in duty bound to be on the lookout for passengers intending to board any of its conveyances, whether "through" cars or "trippers."

The argument on the part of appellant proceeds as if the right of recovery is asserted under the humanitarian rule, and it is said the judgment may not be sustained for the reason it does not appear defendant could have stopped the car and averted the collision after the motorman saw, or might have seen, plaintiff's husband in a position of peril. But obviously this argument is beside the case, for the theory of the law invoked is not the humanitarian rule but rather that plaintiff's husband was an invitee of defendant at its station at the time and place in question, under circumstances which impelled defendant to exer-

cise care in looking out for his presence and guarding his safety while engaged in the act of obtaining an appropriate position to board its car as a passenger. There can be no doubt of the doctrine relied upon, for it reckons with the peculiar facts and circumstances involved in such cases, to the end of assuring to a high degree the safety of invitees on the station grounds intending to become passengers on the conveyance of the carrier, through imposing the obligation on those in charge of the approaching car to be constantly on the lookout for such persons—that is, by exercising special care toward ascertaining their presence and in so managing the car as to prevent injury to them. Manifestly, the dictates of experience on the part of mankind suggest that the precepts of special care should attend such a situation. Here, defendant invited decedent Meierhoff to occupy the station house on the cold December morning while awaiting the approach of the car, and invited him, too, on seeing the car advancing 600 feet away, to leave the station house, as he did, and pursue the cinder pathway it had provided across the tracks to the platform or stopping place of the car which he sought to board as a passenger. This being true, it was within the range of reasonable probabilities that he should be present there in passing across the tracks at the time the car approached, and the case is, therefore, wholly dissimilar from one involving a trespasser on the tracks or even that of a pedestrian at the crossing of a public highway. Due care in such circumstances required defendant to anticipate decedent's presence and look out for his safety by slowing down the speed of the car while in company with Rodgers, who carried the lantern, he was seen to be crossing the tracks. The evidence is, that the tracks from the eastward were straight and the view was open, and there can be no doubt that the motorman either saw, or by exercising care might have seen, the two men with the lantern

crossing the tracks to the passenger platform beyond. It is entirely clear that defendant was remiss in its duty on the occasion in question, and the authorities so declaring the rule are abundant. [See Warner v. Baltimore & Ohio R. R. Co., 168 U. S. 339; Karr v. Milwaukee, etc. Traction Co., 132 Wis. 662; Chunn v. City & Suburban Ry. etc., 207 U. S. 302; Burbridge v. Kansas City Cable R. R. Co., 36 Mo. App. 669; Great Falls, etc. R. R. Co. v. Hammerly, 40 App. Cas. Dist. of Columbia, 196; Canham v. Rhode Island Co., 35 R. I. 177, 85 Atl. 1050.]

But it is said no recovery may be allowed because decedent was negligent for his own safety, in that he attempted to cross the tracks immediately in front of an approaching car. The special circumstances above adverted to relieved plaintiff's husband, in a measure, from the obligation to look and listen for the approach of a car immediately before stepping upon the track, because, as an invitee there, he was justified in assuming defendant would exercise due care with respect to him. The evidence is the car was 150 feet distant when Meierhoff and Rodgers stepped upon the north track on which the collision occurred, and it does not appear that either one then knew the great speed at which it was moving toward them. Indeed, they were facing northwest following the cinder path as defendant had invited them to do and the car moving west was, therefore, partly in the rear. Obviously it cannot be said, as a matter of law, that an ordinarily prudent person in the circumstances stated, desiring to board the car from the opposite side of the track would not venture to cross on the pathway provided, when the car was 150 feet away and approaching a stopping place. With respect to this subject-matter, too, the instant case is to be distinguished from that of a trespasser or a pedestrian on the track, for it is said the invitee, approaching the place provided for the reception of passengers, viewed as a reasonably prudent man in the

exercise of ordinary care for his own safety, may well believe that, in view of such implied invitation to cross, the movement of the approaching cars will be so regulated or adjusted as to permit him to do so in safety. In this view, the rule with respect to contributory negligence, though not absolved, is relaxed, in a measure, in order to effectuate the ends of justice in keeping with the attendant facts and circumstances. The question is, therefore, usually one, as in this case, for the jury. [See Warner v. Baltimore & Ohio R. R. Co., 168 U. S. 339; Karr v. Milwaukee, etc. Traction Co., 132 Wis. 662, 668; Burbridge v. Kansas City Cable R. R. Co., 36 Mo. App. 669.]

What has been said sufficiently disposes of the argument directed against plaintiff's first instruction, and it is unnecessary to prolong the opinion with respect to that matter.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.