CARRIE CARLISLE, Administratrix, Appellee, v. DAVENPORT & MUSCATINE RAILWAY COMPANY, Appellant.

RAILROADS: Injury to Passenger—Negligence. Evidence reviewed, and held to present a jury question on the issue of contributory negligence in a case where deceased, in the nighttime, at a railway station, and in a place of danger, but in compliance with the rules of the company, was signaling a train to stop.

*Appeal from Muscatine District Court.*—M. F. DONEGAN, Judge.

MARCH 15, 1920.

ACTION to recover damages for the death of plaintiff's intestate. Trial to a jury. The trial court overruled defendant's motion for a directed verdict, made at the close of plaintiff's testimony, and again at the close of all the testimony. The jury returned a verdict for plaintiff for $1,000. Defendant's motion for new trial was overruled, and judgment entered on the verdict. Defendant appeals.—*Affirmed.*

*E. M. Warner*, for appellant.

*Kaufmann & Willis, J. J. Fishburn*, and *G. Albee*, for appellee.

PRESTON, J.—Several grounds of negligence were alleged in the petition, but those submitted were:

"That, on the 8th day of November, 1913, between 9 and 10 o'clock P. M., the plaintiff's intestate, Albert Dollarhide, was at a station upon said line of railway, called Melpine Station, for the purpose of becoming a passenger upon one of the cars of said company; and, while upon the platform of said station, he was struck by the defendant's car, and received injuries which caused his death; that the plaintiff's intestate was free from contributory negligence; and

that the defendant was negligent, in that the car which struck the plaintiff's intestate was, at the time, being operated at a reckless rate of speed, to wit, at a rate of 40 to 50 miles per hour; and that the defendant was negligent in that, by the signals given by the motorman upon said car, the deceased was led to believe that said car was going to stop at said station; and that said car approached at said high and dangerous rate of speed, and deceased was struck by the front part of said car and killed."

Appellant states in argument that they desire to submit the case on two propositions only. It is contended that the evidence does not show that defendant was guilty of any negligence, and that the record conclusively shows that plaintiff's intestate was guilty of contributory negligence. It is also thought that the verdict is contrary to Instruction No. 12, and that, under the evidence and the instruction, the verdict should have been for the defendant. Instruction No. 12 reads thus:

"You are instructed that it was the duty of Albert Dollarhide, after his signal to the motorman, if he gave one, was answered, to step back from the track to a place of safety, if, under the circumstances, he could reasonably have done so. Due care for his own safety required this of him. If you find from the evidence that his signal to the motorman was answered, and the answer was heard by him when the car was a sufficient distance from him to have enabled him to retreat to a place of safety, and that he negligently failed to do so, then you should find that he was guilty of contributory negligence, and your verdict should be for the defendant."

No complaint is made as to the form of the instruction. A discussion of the evidence and the holding that the evidence was such as to make it a jury question in regard to the alleged contributory negligence, will dispose of the objection in regard to the instruction. Appellant's theory

·of the case appears to be somewhat different on this appeal
from what it was on the first hearing. . Appellant's argu-
ment is directed almost entirely to the question of plain-
tiff's contributory negligence, while appellee argues more
the question of defendant's negligence.   On the for-
mer appeal, 178 Iowa 224, it was determined that
the evidence was sufficient to take the case to the jury on
defendant's alleged negligence.   The evidence in that regard
is substantially the same on this appeal.   Aside from that,
we are satisfied, from an examination of the evidence on
this appeal, that the question of defendant's negligence was
properly submitted to the jury, so that we deem it unnec-
essary to review the evidence on that point.   There was some
discussion in regard to the question of contributory negli-
gence on the former appeal, but it is not presented now in
just the same manner as it was before.   On the former ap-
peal, the court directed a verdict for the defendant, at the
close of the plaintiff's evidence, and the case was determined
without the evidence for the defendant.   The evidence is
set out, to some extent, on the former appeal, but we deem
it necessary, in view of the argument now presented, to set
out some additional facts bearing on the question of con-
tributory negligence, which we shall attempt to do without
repetition.

Melpine Station is 11 or 12 miles from Muscatine.   The
track at that point runs generally east and west, though
not exactly so.   A public highway crosses the railway at
this point, at right angles.   The only building is the booth
for the protection of. passengers which stands on the north
side of the railway track, and immediately adjacent to the
east side of the highway.   The booth was 8½ feet from the
track, 5½ feet deep, and 9½ feet in length.   The side next ·
the track was open.   The floor of the booth was continued
to the north rail.   There were no planks between the rails in
front of the booth, but, on the opposite side of the track,

there was a platform for the use of passengers. There is a wing cattle guard fence along the east end of the platform. The station is at the west end of a curve, which begins about 450 feet to the east. There is something of a cut through which the railway passes, at a point about 1,200 feet east of the station. There is a 1 per cent grade from the east to the west. Appellant contends that a car approaching the station is at all times in full view of a person standing upon the platform, for a distance of about half a mile east, but appellees contend that there is more or less obstruction to the view. Some of the witnesses testify that it was a cold, dark, cloudy night, and that there was a heavy wind blowing from the northwest. Others say that it was not very dark. The headlight was shining brightly, and the evidence shows that it would temporarily blind a person at the booth, after the car had straightened around the curve, but before that, the middle of the ray of light would strike 78 feet south of the station, when the car is 600 feet distant, 19 feet, when it was 300 feet, nearly 9 feet, at a distance of 200 feet, 2 feet, at a distance of 100 feet, and 6 inches at a distance of 50 feet, so that it would be flashed on a person at the station suddenly. A witness testifies that, when the light is thrown upon the platform at the station, it is thrown gradually, as the car rounds the curve. The outer rays at first come upon the platform, and then the stronger rays from the center of the reflection. However, the lights in the car would show from the side, at certain places. Passengers on the car and others, one of such others being a party in an automobile, who was racing with the interurban car, gave testimony as to the lights, whistles, speed of the interurban, etc. There is some conflict in the testimony at some points on these matters; but it seems to be undisputed that the motorman gave the station whistle signal at the whistling post, about 1,500 feet east of the station, and the evidence tends to show that thereafter, when

approaching the station at a distance variously estimated at from 200 to 400 feet, the whistle was sounded. As a summary of the testimony of one witness, he says:

"Q. About 1,500 feet east of the station, at the regular whistling place, you heard one long blast of the whistle; then, within 200 or 300 feet of the station, you heard two; then, when the car was passing the station, or after it had passed the station, you heard three short blasts; and then, before the motorman backed the car back to the station, you heard three more short blasts? A. Yes."

The car stopped at Melpine for passengers only on signal. There is evidence from which the jury could have found that deceased gave the night signal, or was in the act of giving it, when he was struck. He was familiar with the surroundings, and the method of giving the signal, and left his home near by, with matches. When he left home, he was in full possession of his faculties; was not ill or excited; went as he normally would have gone. After the accident, some burned paper was found, close to the track. Appellant concedes in argument that the jury might be warranted in finding that, when the car was from 200 to 300 feet from the station, the motorman saw decedent's signal, and answered it. This, we think, has an important bearing on the question of the alleged contributory negligence of deceased, considering the appearances from his viewpoint, even though the motorman did not, as he says, receive the signal. He having given the signal, and the motorman having answered it, deceased had a right to assume that the car would stop at the station; and the jury may well have found that deceased did not have time to step back from the track to a place of safety, after he discovered, if he did, that the car was not going to stop. The car was going very fast, and appellant concedes and figures that the car would go the distance from the time the motorman answered the signal, to the station, in three seconds, and argues that this was

time.enough for deceased to step back to a place of safety.
This might be so, under some circumstances, but appellee ar-
gues that deceased was temporarily blinded by the head-
light, and became confused; that the car was coming at a
high and excessive rate of speed; that he had a right to sup-
pose the car would stop; and that, if he was in a place of
danger, on or close to the track, he had been invited there,
to give the stop signal, by the rules of the defendant com-
pany; which will be referred to in a moment. There are
other circumstances bearing upon this point, some of which,
in regard to the position of deceased and the character of
his injuries, will be mentioned later. The tendency of the
bright headlight to blind him, and the obstructions, and so
on, have already been mentioned. The motorman testified
that he received no signal to stop, and that he did not in-
tend to stop. The testimony of the various witnesses is to
the effect that the car was going at the rate of from 40 to
55 miles an hour. There is some contradiction in the tes-
timony of the motorman as to this. At one point in his tes-
timony, he says that, after he gave the whistle at the whis-
tling post, he slowed down to about 30 to 35 miles an hour.
At another place, he says substantially that, when he saw
there was no signal, and no passengers, he did not intend
to stop; and that he increased his speed, after passing the
whistling post, and gave a through whistle, and also whis-
tled when he was about at the booth. He also makes some
claim in his testimony to have whistled for the crossing, but
he contradicts himself, to some extent, as to that. The mo-
torman says that, at about the time he reached the booth,
the deceased came out of the booth and upon the track,
when the car was practically upon him; but he is contra-
dicted by the circumstances, and the jury may well have
found that the motorman was mistaken in this. Plaintiff
contends that deceased was in the act of giving the signal at
the time he was struck, and, under the circumstances, and

as stated, had not time to step back. The testimony shows
that the burned piece of paper was close to the track on
the north side, and that there were blood splotches towards
the west, from 1 to 3 feet from the north rail. The injuries
of the deceased were such as to indicate that deceased was
in that position. The ribs on his right side were broken,
and the bones of the entire right forearm about the wrist
were crushed. The broken pieces of bone protruded through
the flesh, indicating that it was struck by the car, and the
testimony is that the injury could have been so inflicted.
Witnesses give their opinion that, from appearances, the
arm was not run over. There were some other injuries.
In signaling a car coming from the east, deceased would nat-
urally be facing east; whereas, had he come from the north,
and was going south, as claimed by the motorman, he would
have been more likely to have been injured on the left side.

The rules of the company, posted in the station at Mel-
pine, provide:

"When you hear approaching train sounding one long
blast of whistle for station, step out to the rail, and extend
one arm horizontally across the track. Remain so until
the motorman answers with two short blasts of whistle,
then step back away from the rail. At night, do the same,
holding a lighted match or burning paper in your hand, wav-
ing same, until the motorman replies with two short blasts
of the whistle."

Deceased went to the station for the purpose of taking
this car, and had taken the initial steps to becoming a pas-
senger.

Appellant cites and relies on *Artz v. Chicago, R. I. &
P. R. Co.*, 34 Iowa 153; *Landis v. Inter-Urban R. Co.*, 166
Iowa 20, 21; *Hinken v. Iowa Cent. R. Co.*, 97 Iowa 603;
*Wilson v. Illinois Cent. R. Co.*, 150 Iowa 33; and like cases.
Without reviewing the facts in such cases, we think that,
because of the difference between the facts therein and in

the instant case, they are not in point. Appellee cites *Lundien v. Fort Dodge, D. M. & S. R. Co.*, 166 Iowa 85, 90, and *Kern v. Des Moines City R. Co.*, 141 Iowa 620, 631, to the point that defendant could not place plaintiff in danger by its own negligence, and then excuse itself on the ground that the injured party did not exercise care in extricating himself from the peril thus induced. They also cite the *Lundien* case, supra, to the proposition that deceased, to follow the defendant's instructions to stop the car, was compelled by the defendant to put himself in a place of danger, and his conduct can only be judged by considering what he had a right to expect from the other party.

In *Karr v. Milwaukee L., H. & T. Co.*, 132 Wis. 662 (113 N. W. 62), the facts were somewhat analogous to those in the instant case, and it was held that the question of the alleged contributory negligence was for the jury. The question is discussed in that case whether the party was a passenger or not; but that question seems not to be raised in this case. No case precisely in point as to the facts is cited. That, of course, would be difficult to do. Each case must stand upon its own bottom. We are of opinion that the circumstances heretofore set out were sufficient to take the case to the jury, and that the jury was justified, under Instruction No. 12, and under the entire record, in finding that deceased was not guilty of contributory negligence. The judgment is—*Affirmed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.