MARTIN O. PETERS, ADMINISTRATOR OF THE ESTATE OF WILLIAM P. PETERS, deceased, Respondent, v. JAMES W. LUSK, WILLIAM C. NIXON, and WILLIAM B. BIDDLE, Receivers of ST. LOUIS AND SAN FRANCISCO RAILROAD, Appellants.

St. Louis Court of Appeals.     Opinion Filed November 6, 1918.

1. **TRIAL PRACTICE: Demurrer to Evidence: Effect.** On defendants' demurrer to the evidence at the close of the entire case, plaintiff is entitled, in addition to such testimony as may have been adduced on his behalf, to the benefit of any favorable testimony adduced by defendants' witnesses, and where testimony of defendants' witnesses is contradicted it must, for the purpose of considering the demurrer, be taken as false, and plaintiff must also be allowed the benefit of any reasonable inference of fact arising on all the proof.

2. **RAILROADS: Death on Track: Contributory Negligence: Invitee: Station Grounds.** Even though the deceased was an invitee and upon station grounds he was guilty of negligence directly contributing to his death, when, after he got into the clearing between the two station buildings and before passing onto the main track, he did not look for the approaching train, the rays of light from the headlight of which were streaming down the tracks, and which train, by the most casual glance, he could have seen approaching.

3. ——: ——: ——: **Peremptory Instruction.** In such case a peremptory instruction to find for defendants asked at the conclusion of the entire case, should have been given.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. George H. Shields,* Judge.

REVERSED.

*E. T. Miller, A. E. Heid, A. P. Stewart,* for appellants.

(1) The demurrer to the evidence should have been sustained, and the peremptory instruction requested by defendants at the close of all the evidence should have been given. On the undisputed facts disclosed by the record, deceased, at the time and place of the accident, was guilty of negligence directly contributing to his death. This, under all the authorities, bars a recovery. Vandeventer v. Railway,— Mo. —, 177 S. W. 834; Burnett v. Railroad, 172 Mo. App. 51; Farris v. Railroad, 167 Mo. App. 392; Newton v. Railroad, 152 Mo. App. 167; Moody v. Railway, 68 Mo. 471; Boyd v. Railway, 105 Mo. 371; Watson v. Railway, 133 Mo. 246; Kelley v. Railroad, 75 Mo. 140; Kreis v. Railway, 148 Mo. 321; Maxey v. Railway, 113 Mo. 1; Tanner v. Railway, 161 Mo. 497; Moore v. Railway, 176 Mo. 544; Schmidt v. Railway, 191 Mo. 228, 229; Green v. Railway, 192 Mo. 131; Porter v. Railway, 199 Mo. 96, 97; King v. Railroad, 211 Mo. 1; Laun v. Railroad, 216 Mo. 563; Rollison v. Railroad, 252 Mo. 542, 543; Keele v. Railway, 258 Mo. 77, 78. (2) Instruction No. 1 given on behalf of plaintiff is erroneous and conflicts with the instruction given by the court at the request of defendants. Defendants' given instruction correctly states the law applicable to the facts as shown by the evidence, and is supported by the authorities, supra. It is, in effect, a peremptory instruction to find for defendants. Plaintiff's instruction No. 1 is opposed to these authorities. Authorities cited under Point 1. Plaintiff's said instruction No. 1 is further erroneous in that it is misleading and is not supported by the evidence. (3) The court erred in giving plaintiff's instruction No. 3. This instruction is a mere abstract

statement of law, and has no bearing on the issues as made by the pleadings, or the parts as developed by the evidence. A general duty to run a train without negligence becomes a particular duty to no one until he is in a position to complain of the negligence. Frye v. Railroad, 200 Mo. 407; Nivert v. Railroad, 232 Mo. 648. (4) Instruction No. 6 given for the plaintiff, on the measure of damages, is erroneous. Hegberg, Adm., v. Railroad, 164 Mo. App. 559; Johnson, Adm., v. Mining Co., 171 Mo. App. 143; Troll, Adm., v. Gas Light Co., 182 Mo. App. 609; Kirk, Adm., v. Railroad, 265 Mo. 341; Smelser, Adm., v. Railroad, 262 Mo. 39, 42; Colvin v. Railroad, 200 S. W. 715.

*Blodgett & Rector,* for respondent.

(1) The demurrer to the evidence was properly overruled, because: (a) Where on many previous occasions large crowds have assembled at a station and occupied a level plateau in the front of the station house when waiting for trains the carrier must anticipate the reoccurrance and take extra precaution to prevent accident. (b) The local which deceased was expected to take being scheduled to depart from Valley Park almost immediately after the westbound express triain passed through, the deceased had the right to assume that appellants would operate its express train with every reasonable precaution to prevent injury. (c) That acquiescence of the appellants for years in the use of its station grounds by passengers or intended passengers and by the public at large, raised the presumption that the operatives of the train knew, or should have known, of such use at the point where deceased was killed. (d) It was gross negligence for appellants to propel a fast express train through unguarded station grounds at Valley Park, a place of five thousand inhabitants, at night at forty-five miles an hour without ringing a bell or sounding a whistle or giving other proper warning of the approach of the train. (e) It was the duty of appellants to use ordinary care in running its train through its station grounds

at Vallety Park. Whether such care was exercised was
a question for the jury. In the instant case there was
ample evidence to warrant the submission to the jury of
the question whether the train was being operated
at a high, unusual, reckless or negligent speed. Hicks
v. Pacific Railroad Co., 64 Mo. 439; Brown v. Kansas
City, etc., Ry. Co. 69 Mo. 223; Hodges v. St. Louis,
etc., Ry. Co., 71 Mo. 50; Rawson v. Depot & Express
Co., 142 Mo. App. 372; Mierhoff v. United Railways
Co., 172 S. W. 402; Johnson v. Railway Co., 259 Mo.
546; Nixon v. Faulkerson, 193 S. W. 500; Ellis. v.
Street Ry. Co., 234 Mo. 683; Langan v. St. Louis,·
etc., Ry. Co., 72 Mo. 392; Crawford v. Stock Yards
Co., 215 Mo. 414; State v. Ellison, 182 S. W. 966;
Eppstein v. Missouri Pac. Ry. Co., 197 Mo. 720; Under-
wood v. Railway Co., 177 S. W. 724; Dunn v. Mo.
Pac. Ry. Co., 182 S. W. 109; Glaser v. Rothchild, 221
Mo. 180; O'Donnell v. Patton, 117 Mo. 13; Welch v.
McAllister, 15 Mo. App. 492; Drescher v. St. Louis, etc.,
Ry. Co., 200 Mo. 310; Robin v. Railway Co., 103
Mo. App. 308; Gratiot v. Mo. Pac. Ry. Co., 116 Mo.
451; Thompson v. Railroad Co., 243 Mo. 336; Beard
v. Mo. Pac. Ry. Co., 197 S. W. 910-11; Frye v. Rail-
road Co., 200 Mo. 377; Ahnfield v. Wabash Ry. Co.,
212 Mo. 280; Hufft v. Ry. Company, 222 Mo. 286; Cotner
v. Railroad Co., 220 Mo. 284; Burger v. Railroad Co.,
112 Mo. 246; Halzmer v. Street Ry. Co., 261 Mo.
407-8; St. Louis, etc., Ry. Co. v. Hutchenson, 101 Ark.
424; Illinois Central Ry. Co. v. Daniels, 27 L. R. A.
(N. S.) 131; Deickman v. Chicago, etc., Ry. Co., 31
L. R. A. (N. S.) 338; Kuhlan v. Boston, etc., Ry.
Co., 193 Mass. 341; 79 N. E. 815; Hays v. St. Louis,
etc., Ry. Co., 102 Ark. 164; C. R. I. & P. Ry. Co. v.
Stepp, 164 Fed. 785; Louisville, etc., Ry. Co. v. Morgan,
192 S. W. 672. (2)   In the light of the·facts pleaded
and proven, and in the light of the authorities ·cited
in connection with the demurrer to the evidence, there
cannot be any serious question as to the propriety
of the giving of plaintiff's instruction No. 1. Cases
cited under point 1; (3) Instruction No. 3 offered by

the plaintiff and given by the court properly and accurately instructed the jury on the degree of care required to be exercised by appellants under the circumstances developed by the evidence. Montomery v. Railroad, 181 Mo. 489-99; Midgette v. Brauning Mfg. Co., 150 N. C. 333; Wilkins v. St. Louis, etc., Ry. Co., 101 Mo. 101; Groom v. Kavanaugh, 97 Mo. App. 367; Logan v. United St. Ry. Co., 183 Mo. 590; Linder v. St. Louis Transit Co., 103 Mo. App. 581; Sweeney v. Kansas City Ry. Co., 150 Mo. 393-401; Tetherow v. St. Louis, etc., Ry. Co., 98 Mo. 74; De Bolt v. Kansas City, etc., Ry. Co., 123 Mo. 496; Keown v. St. Louis, etc., Ry. Co., 141 Mo. 86. (4) Instruction No. 6 offered of the plaintiff and read to the jury on the measure of damages was correct. Albert v. St. Louis, etc., Ry. Co., 179 S. W. 955; Boyd v. Railroad, 236 Mo. 236 Mo. 81-92; Fugler v. Bothe, 117 Mo. 491.

BECKER, J.—This is an action brought by the administrator of the estate of William O. Peters, deceased, to recover damages for the death of the said Peters under section 5425, Revised Statutes of Missouri, 1909. Upon trial a verdict and judgment resulted for plaintiff in the sum of $3500 and defendants appeal.

Peters' regular occupation was that of railroad brakeman. He was thirty years old and unmarried. One week prior to his death Peters had gone to Valley Park, Missouri, from St. Louis, having obtained temporary employment for a week in some factory. There is testimony that on Saturday October 11, 1913, the night on which Peters was killed, he had intended to return to his brother's home in St. Louis.

The St. Louis & San Francisco Railroad Company maintained a depot at Valley Park. The depot which was then in use was situated on the north side of their tracks, while on the south side of the tracks there was in the course of erection a new station building located nearly opposite the old depot. The space between these two station buildings is referred to as a "cinder plateau." From the south there is a street which runs

up to the new depot building almost parallel with the west line thereof. This street turns abruptly at the new station and runs west parallel with the Frisco tracks for a distance of 100 yards or more and then turns north crossing the tracks. From the point where this street thus turns to the north a cinder path extended north to the tracks, passing near to and west of the new station. Tickets could only be bought at the old station so that one coming from the south had to walk along the cinder path and then cross the cinder plateau traversed by defendants' tracks in order to reach the old station.

A westbound express train known as No. 5, which struck and killed the deceased, was due at Valley Park at 9:50 P. M., but was not scheduled to stop there. On the night in question this train coming from St. Louis approached Valley Park from the east running on the main track, which was the first track north from the new station building. The tracks immediately between the depots, for the purposes of this case, may be considered as running east and west and a short distance east of the depots the tracks curve to the southeast. Just what distance east of the station this curve begins is not clear from the record, one witness putting the distance as low as 150 feet, while others estimated the distance to be a quarter of a mile.

There is testimony that an eastbound "local" passenger train, which it appears was operated only between St. Louis and Valley Park, was scheduled to leave the latter place within a few minutes after the express which killed Peters passed through. It may be inferred from the record that the deceased had expected to take this local train to St. Louis and had proceeded from that part of the town which lies south of the tracks north along the street and cinder path above mentioned to the station grounds and that he was struck near and perhaps a little distance west of the new station while attempting to cross the main tracks in order to reach the station or platform on the north side. His body was found lying six or eight feet north

of the track on which the express was operated and near a mail crane said to be situated about fifteen to twenty yards west of the new station.

According to witnesses for plaintiff the rate of speed at which the train passed the station at Valley Park was between forty or fifty miles per hour, and these witnesses, though in a position to have heard a whistle sounded or bell rung, testified they heard none.

One of plaintiff's witnesses testified that "the train slipped through quietly, kind of stealthily away, the train did not make much noise, it was coming down grade there." Another of plaintiff's witnesses testified that he and some companions were returning to the Meremac Canoe Club from a picture show situated in that part of the town which lies south of the railroad tracks, and when they were within about 200 feet of the new station they observed the headlight of the westbond express approaching from the east and that the rays of the headlight were thrown down between the two stations; that the train was then about 200 yards away from the depot; that at the time he noticed the headlight of the train he observed a man standing at the southwest corner of the new station; that he lost sight of this man and a few minutes later, after the train had passed, he saw the body of this same man, as he believed, laying north of the tracks near the mail crane mentioned above.

The testimony in defendants' behalf tended to show that the train which struck and killed the deceased was operated through Valley Park at about twenty to twenty-five miles per hour; that the locomotive had an automatic bell which was kept ringing constantly from the time the train left St. Louis until it had gotten a mile or so beyond Valley Park; that the locomotive was equipped with an electric headlight which threw a brilliant light, the rays of which struck the ground about ninety feet in front of the locomotive and that any object closer to the locomotive than ninety feet was in the dark; that the engineer whistled for the station when about one and a half miles east thereof gave a

road crossing signal when 100 to 150 yards east of the station; that as the train passed through Valley Park the fireman was engaged in "firing;" that the engineer saw nothing ahead on the tracks as the train approached Valley Park but as the train came up to the station grounds the engineer was watching the overhead block signal lights. The trainmen testified that they continued on through Valley Park without stopping and did not learn that they had killed Peters until the following morning.

Several winesses for the defendants testified that they heard the train whistle and heard the bell ringing and likewise heard the noise of the train. Two witnesses for defendants testified in substance that they were standing a short. distance from the defendants' tracks and near the west end of the new station; that they knew the train was coming and were waiting for it to pass before crossing the tracks; that while they were thus waiting the deceased ran past them and upon the tracks. One of these witnesses said: "Just about a second this gentleman came. along by and made a hop across the tracks and as he made his hop the pilot shot by." The other witness said: "While I was standing there waiting for the train to pass, this fellow ran past me to get across the tracks, that is started across and the train struck him."

There was testimony that from the north line of the new station to the nearest rail of the main tracks was a distance of from fifteen to twenty feet and that the view east along the tracks to the curve is unobstructed from a point about five feet north of the north line of the new station. According to the testimony there were no lights on the new station building but there were incandescent electric lights under the eaves of the old station.

Considering the case as we shall now do, as on defendants' demurrer at the close of the entire case, plaintiff is entitled, in addition to such testimony as may have been adduced on his behalf, to the benefit of any fovorable testimony adduced by defendants' witnesses

and where testimony of defendants' witnesses is contradicted it must (for the purpose of considering the demurrer) be taken as false. In addition thereto we must allow plaintiff the benefit of any reasonable inference of fact arising on all the proof. [Fritz & Groh v. Railroad, 243 Mo. l. c. 77, 148 S. W. 74. Stauffer v. Railroad, 243 Mo. l. c. 316, 147 S. W. 1032; Williams v. Railroad, 257 Mo. 87, 165 S. W. 788.]

After much effort expended in studying the facts as presented by the record in this case and even though it were conceded that the defendants were negligent in running the train at a high rate of speed at the time and place of the accident and were also negligent in failing to sound the whistle or ring the bell, we are constrained to hold that the contributory negligence of William O. Peters, deceased, bars a recovery in this case.

One of plaintiff's witnesses saw the deceased standing at the southwest corner of the new station building when said witness and some friends were walking up the street toward the said building and were about 200 to 250 feet from it. At that time, according to their testimony, their attention was called to the approach of the train by seeing the headlight. According to one of the witnesses the train was then 350 to 450 yards east of the new station, while according to another of plaintiff's witnesses the train was just coming off the curve onto the straight track about a quarter of a mile east of the new station building. One of plaintiff's witnesses testified that "when we were south of the new depot building we could see the rays of the headlight *between the two stations from where we were at the time*" (italics ours), and this witness and several others were "at the time" 200 feet south of the new station building.

The ground between the two stations through which the main tracks as well as two or more side or switch tracks were laid, was a level cinder surface. The distance between the front (north) line of the new station building and the nearest (south) rail of the main tracks,

according to plaintiff's witnesses, was fifteen to twenty feet. A person crossing from the new station building to the old station, upon getting on a line with the north front of the new depot building could see the tracks down towards the east and when five feet north of that line of the new depot "he certainly could see to the curve," and "if he got within five feet of the Frisco tracks, coming from the south and looking toward the east, he could see at least the break in the curve and possibly farther. After you clear the obstruction of the new depot and approach nearer the tracks there is no further permanent obstruction to prevent a man from seeing toward the east down the tracks near the curve."

Thus Peters, the deceased, according to the testimony of his own witnesses, was seen standing at the southwest corner of the new building at the same time when these same witnesses who saw him testified they saw the rays from the electric pilot light of the engine shining between the old depot and the new station house. Considering only the testimony favorable to plaintiff, what Peters did from that moment on until he met his death a few seconds later we do not know. Certain it is however that in that brief interval he got upon the main tracks of the railroad. To have done so the deceased must in some manner have passed through the open space from the north line of the new station house to the south rail of the main track (a distance of fifteen to twenty feet) before he came into actual danger, and yet while traversing that distance, by the most casual glance to the east, if the testimony of his own witnesses is to be believed, he could have seen the rays of light from the headlight of the approaching locomotive streaming down the tracks and between the two depots, and each step that he took which brought him closer to the nearest rail of the main tracks also brought within his view the tracks to the east for a greater distance.

Though we invoke the station grounds doctrine as laid down in Neierhoff v. United Railways Co., 186

Mo. App. 567, 172 S. W. 402, that as to a passenger and even an invitee "the rule with respect to contributory negligence, though not absolved, is relaxed, in a measure, in order to effectuate the ends of justice in keeping with the intendant facts and circumstances," yet in view of the facts and circumstances in this case we must hold the deceased was guilty of contributory negligence, for to do otherwise would be to hold the railroad company to be an insurer of the safety of an invitee and at the same time to absolve the invitee from exercising any degree of care whatsoever to look out for his own safety. We must rule that even though the deceased was an invitee and upon station grounds, it was nevertheless, under all the facts and circumstances in this case, the duty of the deceased to look for an approaching train after he got into the clearing between the two station buildings and before passing onto the main track. And as was said in the case of Vandeventer v. Railroad (Mo.), 177 S. W. 834, (a case much similiar to the one before us in that the deceased was killed on station grounds though that point was not raised in the case) "that which the deceased could have learned by the exercise of ordinary care under the circumstances will be imputed to him as a known fact."

Viewing the facts as disclosed by this record as we do, the deceased, at the time and place of the accident, was guilty of negligence directly contributing to his death. It follows that the peremptory instruction to find for the defendants, asked at the conclusion of the entire case, should have been given. [Vandeventer v. Railroad Co., supra, and cases cited.] The judgment is reversed. *Reynolds, P. J.,* and *Allen, J.,* concur.